The opinion of the court was delivered by
Watkins, J.
This is an action for the recovery of - twenty thousand dollars damages for personal injuries which the plaintiff alleges he sustained at the hands of the defendant.
On the issue joined and trial had before the district judge, a decree was rendered in favor of the defendant, rejecting the demands of .the plaintiff, and the latter prosecutes this appeal.
The statement of the plaintiff’s case, as it appears in the petition, is substantially as follows, to-wit:
That on the 5th day of August, 1896, petitioner was employed as foreman of laborers by the defendant, and in the course of his occupation as such, was a passenger, entitled to safe carriage on board a freight train of the defendant, which was used by said company to transport its laborers, foreman and employees from New Orleans to Ohalmette.
That said train at the time of the accident complained of, being-bound from New Orleans to Ohalmette, was operated with an engine in the rear, with no light on the front end of same. That there was no gong sounded, or other signal given of its movement; and there *1128 was no watchman or look-out on the train who could have given to the engineer at the rear end, due notice of there being any obstacle, or stock on the track, which might interfere with its safe movement.
That through this gross carelessness and neglect of the defendant, its agents, servants and employees who were operating the train, the accident occurred, and the injury was inflicted upon him.
Plaintiff assigns as a further evidence of fault and negligence, that the train conductor, and all the train crew, except the engineer, got off the train and left the engineer in exclusive charge of same; and he, being a£ the rear end, and unable to see the track at the forward end, it ran over a cow on the track, and thereby the train was wrecked, and particularly the car on which he was a passenger was derailed, whereby he was “lacerated, mashed and bruised”, his arm was broken and his leg was injured, whereby he has been permanently injured and incapacitated from work and earning a living — this occurrence having taken place during the darkness of the night.
For answer, the defendant denies that plaintiff was a passenger upon any train of the defendant, or that he was entitled to the rights of a passenger; but, on the contrary, avers that the plaintiff was foreman of a dirt train, engaged in hauling dirt, and doing repair work alons’the line of the defendant railroad, and was injured by the said train accidentally running over a cow which was on the track; and that the accident happened entirely without any negligence on the part of the defendant, and, if there was any negligence, it was the negligence of the plaintiff’s' fellow-workmen, for which this company is not responsible.
The answer concludes thus:
“Defendant avers that the plaintiff was cared for at its cost; his doctor’s and hospital bills paid; his wages continued during the time that he was laid up, and that when he recovered, he returned to the service of the defendant, and remained in its service until the 8th day of May, 1896, when he voluntarily quit.
“That he never, at any time, made any complaints of disability to do his work, and performed his work on all occasions satisfactorily, except upon one occasion, when he was reprimanded for negligence • and the plaintiff took offence at this reprimand, quit the service of the company, and brought this suit.”
For the foregoing reasons, defendant prays that plaintiff’s demand be rejected at his cost.
*1129 The reasons assigned by the district judge for his decree in favor of the defendant, are very brief, and as follows, to-wi>t:—
“Plaintiff was a fellow-servant of the train hands. They were all engaged in the same labor of carrying sand or gravel from one point to another along the line of the road for the construction of the roadbed.
“Besides, the whole fellow-servant doctrine is founded upon the still broader doctrine, that a servant engages to encounter all the risks which are incident to the service he undertakes; so that when a servant well knows the existence and extent of the risk or hazard, and willingly exposes himself to it,' he can not recover, if injured. (Stucke vs. Railway Company, 50th Ann., 185-215.)
“The plaintiff well knew of the custom of backing the train at night without headlight or watehout; even a child might have foreseen the consequences, and yet, he voluntarily rode thereon for his own convenience.”
The two' disputed propositions of the case are (1) whether the plaintiff was a passenger, and entitled to safe carriage on the defendant’s train; (2) whether he was foreman of a dirt train engaged in hauling dirt and doing repair work along the line of the defendant railroad at the time of the accident, which was due to the negligence of plaintiff’s fellow-workmen, for which the company is not responsible.
An examination of the evidence shows the following facts substantially:
That plaintiff states that the accident whereby the injury was inflicted upon him, occurred upon the 5th of August, 1896, while he was engaged at work for the defendant. That he was the foreman over the crew of negro-laborers, and that they had been sent out at night to 'take a dirt train along- the line of the Bone Factory and Gentilly Road; and while coming back at eleven o’clock at night, he was injured. That the train was on its way from New Orleans to Ohalmette at the time of the accident. That the engine was on the rear end of the moving dirt train; and no look-out in the front end. That when the accident occurred by the train having encountered a cow upon the track, the conductor and all the train crew, except the engineer, had left the train, as he supposed on account of the badness of the night, and their desire to get to their homes as soon as they could.
That by the collision of the train with the cow, several cars were derailed, and amongst the number, the one on which he was riding. *1130 That as a result of the collision, he was struck in the back by the car on which he was riding, and one of his arms was broken, and one of his legs was injured. That he was dashed down, and the car fell upon him; and he was dug out from beneath the car. That his back and leg and knee were, likewise, injured.
That on account of his injuries, he was taken to the Hotel Dieu, where he was under treatment for about four months; and that he was unable to go to work for six months.
That at the time, he was getting $60 per month; and now he is working at Fabacher’s restaurant at $15 per month.
The following is a part of the interrogation'of .the plaintiff, viz:
“Q. — How did you happen to be on this train when the accident occurred?
“A. — I was foreman over a crew of negro laborers, and we were sent out that night, and at the time we were taking sand, you understand, from the river and putting it on the track along the road-bed.
“They used to send these trains out at night so as to get the gangs together, and get out quick; and so this night I was sent to unload a train, and the accident happened.
“Q. — You were instructed to go with your crew and unload the train ?
“A. — Yes, sir.
“Q. — You had nothing to do with the running of the train?
“A. — No, sir.
“Q. — The train had a foreman, an engineer and a conductor and the crew to run it?
“A. — Yes, sir.
“Q. — Where did you get on the train?
“A. — On the Gentilly Road at the Bone Factory.
“Q. — Is that where you were taking the dirt?
“A. — We were (landing) it there; but I got on the train at Chalmette.
“Q. — Where did you first get on the train?
“A. — At Chalmette.
“Q. — Did you and your gang (load) your train with dirt at that point?
“A. — No, sir; it was loaded at Chalmette.
“Q. It was loaded at Chalmette, and you and your gang got on it for the purpose of coming to what point?
*1131 “A. — To the Bone Factory and Gentilly road_
“Q. — Was it not coming from Chalmette to the Bone Factory when the accident occurred ?
“A. — No, sir.
“Q. — After you had unloaded the dirt, they backed (the train) up ?
“A. — Yes, sir.
“Q. — To get some dirt?
“A. — That was the last trip of the night.
“Q.- — Your quarters were down there?
“A. — Yes, sir.
“Q. — And also the gang’s quarters?
“A. — Yes, sir; we were all going back.
“Q. — Where did this accident occur?
“A. — Two miles from Chalmette.”
The foregoing are answers that were given by the plaintiff to interrogatories that -were propounded by the court; and during his further examination by his counsel nothing contrary or additional thereto was developed.
Several of the laborers who had been on the train, but had departed therefrom when it halted in the vicinity of the Slaughterhouse, corroborate the plaintiff’s testimony substantially.
From the foregoing testimony, it is evident that the plaintiff, as foreman of a gang of laborers, had embarked upon a dirt train of the defendant which was laden with sand that was to be transported a distance of several miles and discharged, for the uses and purposes of the company. That the train had made its trip with safety, its load of sand had been discharged, and it was on the return trip to Chalmette; and when at a point on the road in the vicinity of the Slaughterhouse, the train was halted, the laborers took their departure for their homes, and the conductor and all the train-crew, except the engineer, likewise left the train. The engine being attached to the rear end, and there being neither a headlight on the forward end of the train, nor any one posted thereon for the purpose of giving to the engineer notice of any obstacles that might be on the track, the train was, suddenly, and without warning, brought in collision with a cow, which caused several of the ears to be derailed, and especially the third one from the forward end on which the plaintiff was seated, and thereby sustained the serious injuries which he has related — the occurrence having taken place *1132 at about the hour of eleven o’clock P. M., the night having been dark and. rainy, and the train being' run at a rapid rate of speed.
We think the defendant is liable, and that the principles of law which were announced in Stucke vs. Orleans Railroad Co., 50 Ann., 172, are entirely applicable, and that the defense of fellow service can not properly be applied under the facts of this ease.
The evidence makes it perfectly clear, that neither the engineer who was left in charge of the train after the departure of the train-conductor and the remainder of the crew, nor the plaintiff, was guilty of any fault; and it shows conclusively that the cause of the accident was the direct and immediate result of the train being without a headlight in front, and without any one being posted thereon to keep a look-out for obstacles on the track, and to communicate any danger to the engineer.
This fault was contributed to by the departure of the conductor before the train had reached its destination — thus leaving the engineer to his own resources.
It would not be admissible for this court to hold, under these circumstances, that the plaintiff as a servant of the defendant, had assumed such a risk or hazard as one that was “apparently incidental to an employment intelligently undertaken.”
Smith vs. Sellars, 40th Ann., 527.
But, if in point of fact, there was co-association and fellow-service between the employment of the plaintiff and the engineer, the plaintiff was not guilty of contributory faul t, if the engineer was not guilty of negligence.
In our opinion, we can not do better than cite and collate ¿ few extracts from the authorities cited in the Stucke case, as the best means of stating- the principles of law upon which our decision must rest— the trend of which is, that there is no co-association nor fellow-service between the conductor of -the dirt train and the plaintiff, who was a foreman of a gang of laborers who were engaged in hauling dirt.
In the Stucke case it is said:
“It is equally evident that there was neither co-association nor fellow-service between the conductor * * * and the plaintiff who was working, temporarily, in the emergency pit. Their service and employment sustained no possible relation to each other.
**■*#**# *
*1133 “(But), if the plaintiff had been a fellow-servant of either of said servants, that fellow-service would not relieve the defendant from the just consequences of its own fault and negligence, to which the plaintiff did not contribute.”
In Railway Co. vs. Cummings, 106 U. S., 700, the court say:
“That if the negligence of the company contributed to, that is to say, had a share in, producing the injury, the company was liable even though the negligence of a fellow-servant of Cummings was contributory, also. If the negligence of the company contributed to, it must have necessarily been an immediate cause of, the accident, and there is no defense that another was, likewise, guilty of a wrong.”
In Towns vs. Railroad Co., 37 Ann., 630, this court held:
“It is now settled upon the very highest authority, that when the injury is caused partly by the negligence of a fellow-servant, and partly by the failure of the company to provide proper and suitable apparatus, the negligence of the co-servant will not exonerate the company from the consequences of its own fault” — citing Railway vs. Cummings, supra.
In Myhan vs. Electric Light Company, 41st Ann., 964, this court very clearly defined the duty of the master to its servant in regard to employing them in any dangerous enterprise, in the following emphatic language:—
“At any rate, it was the duty of the defendant company to have known of the dangei’ous character and condition of the electric wires. The knowledge which they ought to have had, the law presumes juris et de jure, they had. Even had the company’s representatives sworn that they did not know of the same, such ignorance on their part would not have exonerated them. A superior is presumed to know, and in law knows, that which it is his duty to know, namely, whatever may endanger the person and life of his employee in the discharge of his duties.”
In Laning vs. Railroad Company, 49th N. Y., 534, the proposition is very well put, in these words, to-wit:
“That some general agent, clothed with the power to make performance for the master has not done his duty at all, or has not done it well, neither shows a performance by the master, nor excuses the master’s non-performance. When it is done, and not till then, his duty is met, or his contract is kept. * * *
*1134 “If a master’s personal knowledge of defects be necessary to his liability, the more he neglects his business, and abandons it to others,.the less will he be liable.”
The principle announced in that case was applied by this court in Poirier vs. Carroll, 35th Ann., 699. But the case of Railway Company vs. Ross, 112 U. S., states the governing rule with regard to the liability of fellow servants in the course of the operation of railroad .trains, in the following language, to-wit:—
“When the service to be rendered requires for its performance the employment of several persons, as in the movement of trains, there is necessarily incident to the service of each the risk that the others may fail in the vigilance and caution essential to his safety; and it has been held in numerous cases, both in this country and in England, that there is implied in his contract of service in such a case, that he takes upon himself the risks arising from the negligence of his fellow servants, while in the same employment, provided always the master is not negligent in his selection or retention, or in furnishing adequate materials and means for the work; and that if injuries then befall him from such negligence, the master is not liable.”
But, in applying the foregoing principles, the court stated the fol- • lowing exception to that rule, and said:—
“The doctrine assumes that the servant causing the injury, is in the same employment with the servant injured, that is, that both are engaged in one common employment. f The question in all cases, therefore, is, what is essential to render the service in which different persons are engaged a common employment?”
In answering that question, the court makes the following quotation from the opinion of the Lord Chancellor in Coal Company vs. Reid, 3 Macq., 266, to-wit:—
“It is necessary, however, in each particular case, to ascertain whether the servants are fellow-laborers in the same work, because, although a servant may be taken to have engaged to encounter all the risks which are incident to the service, which he undertakes, yet he can not be expected to anticipate those which may happen to him on occasions foreign to his employment. When servants, therefore, are engaged in different departments of duty, an injury committed by one servant upon another, by carelessness or negligence in the course of his peculiar work, it .is not within the exemption, and the master’s lia *1135 bility attaches in that ease in the same manner as if the injured party stood in no such relation to him.”
The court also cited with approval an extract from the opinion of the Lord Chancellor in McNaughton vs. Railroad Company, 19 Court Sess. Cases, 271, to-wit:—
“That the master’s liability might be sustained without conflicting with the English authorities, on the ground that the workmen-in that case were engaged in totally different departments of work; the deceased being a joiner or carpenter who, at the time of the accident, was engaged in repairing a railroad carriage, and the persons by whose negligence his death was occasioned, were the engine driver and the person who arranged the switches.”
The court, thereupon, in the principal case, in summing up, said:
“To bring the ease within the exemption, there must be this most material qualification that the two servants must be men in the same common employment, and engaged in the same common work under that common employment.
“There is, in our judgment, a clear distinction to be made, in the relation to their common principal, between servants of a corporation exercising no supervision over others engaged with them in the same employment, and agents of the corporation clothed with the control and management of a distinct department in which their duty is entirely that of direction and superintendence. A conductor, having; the entire control and management of a 'railway train occupies a very different position from the brakemen, the porters and other subordinates employed. He is, in fact, and should be treated as, the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. * * * In no proper sense of the term is he a fellow-servant with the foreman, brakeman, the porter and the engineer. The latter are fellow-servants in the running of the train under his direction. ' As to them and the train, he stands in the place of, and represents the corporation.”
In Towns vs. Railroad Company, 37th Ann., 630, this court recognized and applied the principle announced in that case.
In Hough vs. Railway Company, 100 U. S., 213, the court made reference to the Ross case and said that that court had “placed a very important limitation upon it” — the doctrine of fellow-service — “by holding that the conductor of -a train, and the employees do not bear the relation of fellow-servants to (each other), and- that the company *1136 is responsible to them for the injuries resulting from his neglect of duty.”
In Railrad Company vs. Vaughn, 149 U. S., 914, is stated as an exception-to the rule, that an engineer and fireman of a locomotive engine running along without any train attached, are fellow-servants of the company,.so as to preclude the latter from recovering from the company'for injuries caused by the negligence of the former; but in so doing the court distinguished that case from the Ross case, and affirmed the latter.
From the foregoing authorities, as well as from the principles announced in the Stucke case, we think it is clear that there was neither fellow-service, nor co-association between the plaintiff and the conductor of the freight train • and, consequently, the fault of the conductor in having abandoned the train and subjected it to the peril of the accident which happened afterwards and caused the injury to the plaintiff,- can not relieve the defendant from liability. For the reasons assigned, and those cited in the opinion referred to, we think the judgment appealed from is erroneous, and must be reversed.
The proof shows that the plaintiff received painful and serious injuries by the accident — the car on which he was riding having been derailed, he being thrown violently to the ground and the car precipitated upon him, whereby his arm was broken, and other serious injuries inflicted.
As a- result of the accident,;he was sent to the hospital where he remained under treatment for four months, and was rendered unable to do any work for a period of six months. On account of the injuries inflicted, he was disabled from performing ordinary service, such as .lie was engaged in at the time of the accident, and was only capable of doing some kind of lighter work, for some time thereafter.
The proof discloses that after the accident happened, the defendant’s doctor attended the plaintiff at the hospital and administered to his injuries; and that the company paid his wages during his four months’ confinment therein, and when his broken arm was healed, it gave him other employment.
Of this commendable and highly praiseworthy course of conduct, we feel it our agreeable duty to make mention. But, while approving the company’s acts of humanity and kindness, we can not admit that it has thereby completely exonerated itself from, all responsibility for the reparation of the plaintiff’s injuries, though we do think that it *1137 has the effect of mitigating the damages which plaintiff is entitled to recove? from the company.
We think the evidence justifies an allowance in his favor of the sum of one thousand dollars as damages.
It is, therefore, ordered and decreed that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the plaintiff do have and recover of the defendant the sum of one thousand dollars, with legal interest from judicial demand and all costs.