Statement of the Case.
MONROE, J.
The plaintiff sues to recover damages for personal injuries alleged to have been sustained by him through the negligence of the defendant. The answer is a general denial, coupled with an averment that the accident by which the plaintiff claims to have been injured was caused solely by his own negligence. The case was tried without a jury, and there was judgment for the plaintiff in the sum of $1,000, from which the defendant has appealed; and the plaintiff answers, praying for an increase in the amount allowed.
The facts established by the evidence are as follows: The plaintiff was employed by defendant, and made foreman of an extra gang of laborers assigned to work upon section 4 of its road, in the parish of Madison; the foreman of the regular gang in charge of that section being F. D. Whatley, but the two men, with their gangs, being independent of each other. At midday upon the 4th of August, 1900, the plaintiff, with his gang, having been at work about a mile or a mile and a half west of Tallulah, and Whatley, with his gang, having been at work about a mile still farther west, both men started upon hand cars to go to Whatley’s residence, at or near Tallulah; the plaintiff’s car taking the track about 300 yards ahead of the other, — a circumstance that was observed by Whatley. The speed of the cars was approximately eight miles an hour, but the rear ear appears to have gained upon the other, so that the distance between them just prior to the accident from which this suit arises had been considerably reduced. In that situation, the plaintiff discovered on the track, about 90 feet in front of his moving car, an obstruction in the shape of two lumps of gravel' conglomerate, hard enough “to break with a sledge,” and dangerous for him to have attempted to run over, and he raised his hand as a signal to his men to stop the car, which they did, and it was almost immediately run into by the car behind; the concussion throwing the plaintiff within reach of the lever of his own ear, which was thereby put in motion and came down on his back, inflicting serious injuries. At the moment when it became necessary for the plaintiff to stop his car, the other car was between 90 and 180 feet behind, those being the extremes as stated by different witnesses; but Whatley, whose body was moving up and down with the lever that he was operating, did not see the plaintiff’s signal, which in fact was intended only for his men, and does not seem to have become aware of the emergency with which he was confronted until the plaintiff’s car had been actually stopped, at which time his car was only 00 feet behind. His testimony is not altogether clear upon this point, however, and leaves upon the mind the impression that he may have observed the slowing down of the plaintiff’s car at a greater distance, and this impression is somewhat strengthened by the testimony of others. Be that as it may, it appears that the car that Whatley was using had been repaired in the defendant’s shops, and had been sent to him, about a fortnight before, with a spring that had to be compressed by foot pressure in using the brake, but which, either because of its pattern or stiffness, prevented the effective application of the brake or brake shoe to the wheels of the car, so that, notwithstanding the best efforts of himself and of his men, instead of stopping his car, as they would *399 otherwise have done, they had only succeeded in reducing the speed to about four.miles an- hour when the collision occurred.
It is abundantly established that but for this trouble with the brake the accident would have been averted, and it is also made clear that, if Whatley had been more prudent in the matter of the maintenance of the distance between the two cars whilst they were in motion, it would have been averted, notwithstanding the trouble with the brake; and it is conceded that'Whatley had discovered the defect in the brake apparatus when he first used the car after its receipt from the shop, though, in the face of the plaintiffs denial, the evidence does not show that he had made that discovery.
It is shown to be a rule of the company that the men and foremen are to take their dinners with them when working at points more than a mile away from their camps or section houses, and whilst the plaintiff, who had been working, perhaps, a mile and a half away, admits that he was going to dinner, and explains that he had started out so early in the morning that “the lady” had been unable to prepare it for him to take along, Whatley, who had been working a mile farther away, still, states that he was going in for water and ice, but that he knew that he would get his dinner.
When the accident occurred, the plaintiff was seated upon a small box, resting unsecured upon the front part of the floor or platform of the ear; and an attempt was made to prove the existence of a rule of the company, brought to the knowledge of the plaintiff before the accident, prohibiting the use of such boxes, and requiring foremen to use seats so secured as to prevent their moving either backward or forward. It does not appear, however, that the cars furnished by the company are provided with such seats, or that the plaintiff was furnished with either the materials or tools with which to make one; nor is the evidence relied on sufficient to establish the existence of the rule referred to, and still less that it was communicated to the plaintiff before the accident. Beyond this, it is not shown, and it is not likely, that the accident would have been averted by the use of the fixed seat, since the plaintiff would in all probability have been thrown backward, as the result of the sudden driving of the car from beneath him, even though the seat had remained in position. The effect of the blow received by the plaintiff, it is said, was partially to dislocate his backbone; two of the joints having been driven or pulled apart about half an inch. Eor two weeks thereafter he suffered great pain, which was only alleviated by the use of morphine. He was under the care of a physician for 40 days, during 30 of which he was in bed. He was disabled for three months, and had a lump on his back, and was still unable at the time of the trial to work as he had done before the accident. The evidence does not, however, make it clear that the injury is permanent. The plaintiff lost $125 in wages, and paid his physician $20.
Opinion.
There was no causal connection between the accident and the fact that the plaintiff was going to his dinner from a point a mile and a half, rather than a mile, away. The rule referred to (which we are unable to find in the xu’inted book of rules published by the defendant as taking effect only three days before the accident) was intended, as the plaintiff’s counsel justly observed, “purely for the protection of the master, in preserving to him the time and energy of his servants,” and was not intended to protect the servants from accidents. But that the plaintiff was reasonably within it is evident from the fact that, moving at the rate of eight miles an hour, his car would have taken him to his boarding house and back in 22% minutes, leaving 37% minutes of the hour for dinner, and from the further fact that Whatley, who is indorsed as in all re-sf)eets a most worthy and reliable employé, was going from a more distant point, at the dinner hour, Imowing that he would get his dinner at the same place as the plaintiff (being his own house), though, no doubt, since he so states, he intended also to obtain a supply of water and ice.
The matter of the nonobservance of the rule in question, as also the matter of the plaintiff’s failure to x>rovide the car with a secured seat, may therefore be considered eliminated, as having no bearing on the issues to be decided.
It is said that the plaintiff was guilty of negligence in failing to give notice to What *401 ley of his intention to stop, but the assertion is unsupported by the fact. The plaintiff was called on to act in an emergency, and had but little time within which to do so. The obstruction which threatened the derailment of his car and injury or death to its nine passengers was but seven seconds in time in front of him, and Whatley’s car, according to the latter’s statement, was about that far behind him, whilst between the two men were the eight laborers, constituting the plaintiff’s gang, standing upon the car. The plaintiff did not, therefore, have time, nor was he in a position, to communicate with Whatley. “Persons in sudden emergencies are not held to the exercise of the same degree of caution as in other cases.” Railroad Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. Beyond this, if it be true, as Whatley states, that he could see plaintiff’s ear for a mile and a half, what better signal, at a distance of a hundred feet, more or less, did he need than its slowing down?
It is further contended that Whatley was the fellow servant of the plaintiff, in the same common employment, and that, if the accident was not brought about by the negligence of plaintiff, it must be attributed to that of his fellow servant, and hence that there can be no recovery. It is undisputed that, notwithstanding the negligence of Whatley in allowing his car to run within too short a distance of the car in.front, and in failing, if he did so fail, to notice the slowing down of the other car as soon as he should, he would nevertheless have averted the accident but for the defect in the brake .apparatus with which his car was provided. The accident therefore resulted in part from the negligence of Whatley, and in part from the negligence of the defendant in furnishing him with a defective appliance.
Assuming, then, merely for the purposes ■of the argument, that Whatley was the fellow servant of the plaintiff, his negligence, ■combining as it did with that of the defendant, is not a good defense to this suit. The ■doctrine of the nonliability of the master for injuries inflicted upon one of his servants through the negligence of a fellow servant is predicated in part upon a presumed assumption by each servant of the risk to be incurred from the negligence of his fellow servants, and in part, it is said, upon considerations of public policy; but such a foundation affords no support for the iwoposition that an injured servant is to be considered as having assumed the risk to be incurred from the negligence of the master, or from the combined negligence of the master and a fellow servant.
In Hunn v. Railroad Co., 44 N. W. 502, 7 L. R. A. 506, the supreme court of Michigan said:
“The correct rule, and the reason for it, is stated in Paulmier v. Railroad Co., 34 N. J. Law, 151, as follows: ‘The servant does not agree to take the chance of any negligence on the part of his employer, and no case has gone so far as to hold that, where such negligence contributes to the injury, the servant may not recover. It would be both unjust and impolitic to suffer the master to evade the penalty for his misconduct in neglecting to provide properly for the security of his servants.’ Contributory negligence, to defeat a right of action, must be that of the party injured.”
It is well settled that the obligation to furnish safe appliances is personal to the master, and that his failing to do so cannot be attributed to the negligence of the servant. Troxler v. Railway Co. (N. C.) 32 S. E. 550, 44 L. R. A. 313, 70 Am. St. Rep. 580.
In a note appended to the ease of Lutz v. Railroad Co., 6 N. M. 530, 30 Pac. 912, as reported in 16 L. R. A. 819, the author says, and cites numerous authorities in support of the statement:
“Pew rules have received more general acceptation than the one holding the master liable for injuries to a servant which are caused by the combined negligence of himself and a fellow servant of the injured person. The relative share which the master’s negligence must bear in the production of the injury in order to render him1 liable has seldom, if ever, been directly considered. In the application of the doctrine to the decision of cases, the negligence required to hold the master liable has varied from the slightest absence of care, combined with great negligence of the fellow servant, to negligence, sufficient alone to produce the injury, combined with slight negligence of the fellow servant.”
*403 The rule thus referred to has been recognized by the supreme court of the United States in Railroad Co. v. Charless, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. Ed. 999, and has been applied by this court in Towns v. Railroad Co., 37 La. Ann. 630, 55 Am. Rep. 508; Faren v. Sellers, 39 La. Ann. 1011, 3 South. 363, 4 Am. St. Rep. 256; Stucke v. Railroad Co., 50 La. Ann. 173, 23 South. 342; Dobson v. Railroad Co., 52 La. Ann. 1133, 27 South. 670. See, also, Hill v. Lumber Co., 108 La. 168, 32 South. 372.
The judge of the district court, after an able review of the facts and of the law applicable thereto, reached the conclusion that the plaintiff was guilty of no contributory negligence, and that the accident resulted from the combined negligence of Whatley and the defendant. We are of the same opinion, but whether Whatley and the plaintiff should, under the law of this state, be considered fellow servants, is a question that we find it unnecessary to decide. Our learned Brother also assessed the plaintiff’s damages at $1,000, and as the plaintiff was before him, and his opportunities for forming a correct opinion upon that subject were better than ours are, we do not feel authorized to increase the amount.
Judgment affirmed.