(60 South. 78.)

No. 19,118.

BOURDIER v. LOUISIANA WESTERN R. CO.

(Nov. 18, 1912. Rehearing Denied Dec. 16, 1912.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT (§ 246*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where a bridge foreman deems a bridge unsafe for the passage of a train and places the proper danger signal at the approach to the bridge, and which is ignored by the engineer of a train which is running at a high rate of speed, the foreman cannot be charged with contributory negligence because he runs forward to warn the engineer, who, however, fails to heed the warning in time and runs him down and kills him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 789–794; Dec. Dig. § 246.*]

2. MASTER AND SERVANT (§ 246*)—CONTRIBUTORY NEGLIGENCE—POSITION OF DANGER.

When a man is put in a position of danger through the negligence of another, the law does not expect of him the same use of his reasoning faculties as under ordinary circumstances, and does not charge him with contributory negligence because of his failure to weigh dangers and his failure to choose the least dangerous course of action.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 789–794; Dec. Dig. § 246.*]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by Mathilde Bourdier against the Louisiana Western Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Pujo, Moss & Williamson, of Lake Charles, and Denegre & Blair, of New Orleans, for appellant. McCoy, Moss & Knox, of Lake Charles, and Smith & Carmouche, of Crowley, for appellee.

BREAUX, C. J. Plaintiff claims damages caused her by reason of the death of her husband, Michel Bourdier, a young man 28 years of age, an employé of the defendant, in the sum of $10,000, and an additional sum of $5,000 for the loss of his companionship and the sorrow she has suffered. The case was tried before a jury, and a verdict was rendered in her favor for the sum of $12,000 and interest, and the defendant appealed.

We are informed by the pleadings that Michel Bourdier was the section foreman of the Louisiana Western Railroad Company. On the morning of March 21, 1911, about 8 o'clock, he was at work with a working party in his charge as station foreman. His work consisted in laying gravel surface between the deck of a bridge and the ties which support the rails of the railroad track on the line of the defendant's railroad. While this work was on hand, the bridge was unsafe for passing trains, as Bourdier doubtless thought. At the beginning of the work the section foreman had a yellow flag placed at some distance on the road as a warning to approaching trains that the speed was to be moderated on approaching the bridge, which was the usual signal given.

At about 11 o'clock on the day above mentioned, train No. 10 of the defendant company came from the West at, as plaintiff avers, a dangerous rate of speed of about 50 miles an hour, and passed the signal without heeding it and complying with no-

tice, and that the deceased, in view of the rapid speed, walked on·the bridge to about the center and waved the red flag which, according to the rules of the company, is a notice to stop.

About an hour before the accident, Bourdier flagged the local train (3) and it stopped and did not rush over the bridge at the risk of the lives of all on board the train.

To return to train No. 10, the train· did not obey the signal; the section foreman, Bourdier, turned and ran in an opposite direction on the bridge; as he was nearing the extreme end of the bridge, he was struck by the engine of the train and hurled forward about 60 feet, receiving injuries from which he died in about four hours.

Plaintiff charged carelessness and negligence on the part of defendant.

Defendant filed a general denial, and in addition alleged that Bourdier met his death by his gross fault and negligence in that he recklessly went on the bridge, a place of danger, in violation of defendant's rules.

### Evidence and Discussion.

The train was a passenger train, and the bridge over which it was passing at the time of the accident was 105 feet in length. The yellow flag had been placed about 1,300 feet from the bridge as a notice to trains on their way across the bridge. The yellow flag, under the rules of the defendant company, is a day signal, and the yellow light a signal for the night. Whenever a train comes to the yellow flag or yellow light, it ought to be taken ·by it as a warning to be cautious and reduce the speed.

According to part of the evidence, as we read, in reducing the speed the locomotive should give the steam signal. The engineer testified that on passing the yellow flag the brakes were applied and the speed reduced from 50 miles an hour to 15 or 18 miles an hour.

The three miles added does not improve the situation much, as we understand that 15 miles at most was the limit when the train is notified by the yellow flag. The train, it appears, was not quite on time; it was about eight minutes late. The witnesses for plaintiff have testified that the speed was not perceptibly reduced at any time. It is also in evidence that the train was stopped only after having passed the place of the accident some 400 or 500 feet. This lends corroboration to the testimony of plaintiff's witnesses that the speed was not reduced.

Defendant's witnesses are not always fortunate in testifying in regard to distances. The engineer testified that the length of the coaches of the train is 60 feet, and that he went fully six coaches further than the place after the section foreman was struck before he was able to stop. There were in addition to six coaches two locomotives which added to the distance. There is evidence supporting the proposition that an average train running 25 or 30 miles an hour can be stopped in five or six car lengths. This the engineer himself admitted and said that an average train at that speed can be stopped in 200 feet.

If the train had been running at a rate of speed which rendered it possible to stop it in 200 feet, it may be, indeed it is more than probable, that .the section foreman, the late Bourdier; would have reached the end of the bridge in time to save himself.

In the afternoon on the day of the accident, an order was issued by the trainmaster reducing the speed to 8 miles an hour. That officer was asked as a witness if trains had passed over the bridge running 15 miles an hour before the order had ·been given but after the accident. His answer was that trains had continued to pass over the bridge at the speed of 15 miles an hour. This was evidently an error. The evidence is that an order was given at 4 o'clock in the after-

noon of the day of the accident, and no other train passed over the bridge at a faster speed than that required by the order; that is, 8 miles an hour.

Nothing shows that the bridge was equal to the task of supporting a train running at the rate of 15 miles an hour, and that the section foreman was overzealous in attempting to stop it. It should be borne in mind (as before stated) the witnesses for the plaintiff have testified that there was no moderation in the speed after the train passed the yellow flag signal, and according to the weight of the testimony the speed while the train was passing the yellow flag was 50 miles an hour.

[1] The deceased, about two hours prior to the accident, flagged another train (we have this noted in our statement above of salient facts, it was train No. 3); it stopped and afterward passed over the bridge slowly and no one was hurt. He doubtless felt confident that another train would observe the signal given, and when he heard no whistle, or saw no indication of a slowing of speed, he went to the center of the bridge and tried to stop the train by waving a red flag, which is the signal for the train to stop. The waving of the red flag had no effect whatever; the train continued to run at the fast speed. He became alarmed, turned hastily, and ran toward the end of the bridge seeking to escape the rapidly approaching train. At the time that he came to the center of the bridge, he was seen by the engineer for a moment and others riding, properly enough, on the locomotive. It was assumed that he would step out of the way. In thus assuming, nothing was done toward stopping the train.

[2] He, perhaps, would have been more fortunate had he jumped from the bridge to the water below where there was water or to the ground. The distance between the top of the bridge and the surface of the water was about eight feet. The thought may never have occurred to him to jump from the bridge. Probably it was advisable at that moment to step aside on a short space or end on either side of the track measuring, we understand, about 2½ feet along the track. This also may not have been thought of by him. In a moment of emergency, one can scarcely be held responsible for seeking safety hastily without much regard to the very best means whereby his life be saved. The peril was not created by him. He cannot be judged as one who has himself created the danger. There was no time for deliberation or even for a moment's thought. It follows that he cannot be held as one who was at fault in seeking the first avenue of escape in sight. McGinn v. McCormick, 109 La. 396, 33 South. 382; Taylor v. Railroad Co., 123 La. 775, 49 South. 518.

If he committed a mistake, and of that we are not entirely convinced, and if he was slightly overzealous, he certainly appears as one who was anxious to serve his master.

A short time after the accident, while still conscious and thinking that there was a wreck, thinking of his employment, and it may be of those dependent upon him for support, he asked the roadmaster if there was a wreck, and expressed the hope that he would not be discharged because there had been a wreck.

This incident has no significance except that it shows how deeply impressed the man was that there was great danger.

Having considered the matter of the damages, we have come to the conclusion to allow $10,000 to the plaintiff.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by reducing the amount allowed to plaintiff as damages from $12,000 to $10,000, with interest on the last-mentioned as heretofore allowed.

As amended, the judgment is affirmed.