JOSEPH, *alias* JOACHIM, GATERMAN *et al.*, Appellants, *v.*
AMERICAN LIFE INSURANCE COMPANY, Respondent.

### February 28, 1876.

By a policy of insurance, dated March 5, 1870, on the life of Joachim Gaterman, he was to pay $70 on the day of its issue, and a like sum annually for ten years; in consideration whereof the insurance company agreed to pay to him, should he be alive in 1896, or, if he were then dead, to his son, $1,000.   It was provided that a failure to pay any of the annual premiums should avoid the policy.   The assured died on March 11, 1873, the premium due on March 5, 1873, being unpaid.   It was tendered on the 7th of March, but the assured being then notoriously moribund, it was refused.   *Held*, that the forfeiture was beyond remedy.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

*Slayback & Haeussler*, for appellants, cited: Young *v.* Mutual Ins. Co. of N. Y., 2 Ins. L. J. 289 ; City of Carondelet *v.* Herman Wolfert, 39 Mo. 305–308 ; Taylor *v.* City of Carondelet, 22 Mo. 105 ; Graham *v.* City of Carondelet, 33 Mo. 262 ; Willard's Eq. Jur. 78–83 ; Thompson *v.* St. Louis Mutual Ins. Co., 52 Mo. 470 ; Buckbee *v.* United States Ins. Co., 18 Barb. 541 ; Helme *v.* Philadelphia Life

Ins. Co., 61 Penn. St. 107; Ruse *v.* Mutual Benefit Life Ins. Co., 26 Barb. 556; Hayward *v.* National Ins. Co., 52 Mo. 181; Hutchinson *v.* Western Ins. Co., 21 Mo. 97; Garnhart *v.* Finney, 40 Mo. 460; Pier *v.* Heinrichoffen *et al.*, 52 Mo. 336; Horwitz *v.* Equitable Ins. Co., 40 Mo. 557; Franklin *v.* Atlantic Fire Ins. Co., 42 Mo. 456; Combs *v.* Hannibal Savings, etc., Co., 43 Mo. 148; Northup *v.* Mississippi Valley Ins. Co., 47 Mo. 434; Moore *v.* The Mayor, etc., 45 Mo. 205; Frolich *v.* Atlas Ins. Co., 47 Mo. 406; 18 Barb. 541; 26 Barb. 556; 25 Conn. 242; 25 Conn. 207; May on Ins., sec. 342; 2 Ins. L. J. 120; Fried *v.* The Royal Ins. Co., Court of App. of N. Y. (decision rendered Nov. 11, 1872); 44 Penn. St. 263; 26 Iowa, 9–54, note; 3 Cow. 79; 29 Barb. 312, 314; 25 Barb. 189; 7 R. I. 502–506; 17 Iowa, 276–288; Krum *v.* Home Mutual Ins. Co., 42 Mo. 38; McAllister *v.* The New England Mutual Life Ins. Co., 101 Mass. 558; St. Louis Ins. Co. *v.* Kyle, 11 Mo. 291; 25 Wend. 375; 1 Ph. on Ins. 422; 20 Pick. (Mass.) 389; 16 Wend. 401; 11 Johns. 241; 1 Cush. (Mass.) 257–265; 9 Johns. 192; 6 Cow. 404; 6 Har. & J. (Md.) 408; 3 Gill (Md.), 176; 1 Sumn. 437–440; Craighead *v.* Wells, 21 Mo. 405; Phillips *v.* Protection Ins. Co., 14 Mo. 234; Noonan *v.* Hartford Fire Ins. Co., 21 Mo. 90; Ang. on Ins., sec. 244, p. 265; St. Louis Ins. Co. *v.* Kyle, 11 Mo. 278; Pilkington *v.* National Ins. Co., 55 Mo. 173; Illinois Mutual Ins. Co. *v.* Stanton, 2 Ins. L. J. 29; Taylor *v.* Merchants' Fire Ins. Co., 9 How. 300; Ayres *v.* Hartford Ins. Co., 17 Iowa, 176; Boyd *v.* Talbert, 12 Ohio, 212–214; Smith *v.* Whitbeck, 13 Ohio St. 471; Mutual Benevolent Life Ins. Co. *v.* French, 2 Cin. Sup. Ct. Rep. 321; May on Ins., secs. 342, 361, 503, 505; 2 Story Eq. Jur., secs. 742, 750, 1319, 1323; Markey *v.* Mutual Benevolent Ins. Co., 103 Mass. 78; 1 Dill. 449; 11 Wall. 356; 26 Iowa, 9; 12 Mich. 202; Sims *v.* State Ins. Co. of Hannibal, 47 Mo. 54; Wolf *v.* Howes, 20 N. Y. 201; Broom's Leg. Max. 238–248; 3 Hill. 570; 12 Wend.

.590; 5 Den. (N. Y.) 596; 23 Wend. 306; 29 N. Y. 115;
8 Cow. 297; 19 Wend. 500; 6 Hill. 558; 52 Barb. 43,
44; 44 Barb. 64; 6 Johns. 160; 14 Wend. 215; Chisholm
·v. National Life Ins. Co., 52 Mo. 217.

*Martin & Lackland,* for respondent, cited: Rev. Stat.
1865, ch. 165, sec. 42; Mueller v. Ins. Co., 42 Mo. 85;
·Campbell v. American P—— Life Ins. Co., 2 Big. 16;
·Oakley v. Morton, 11 N. Y. 25; Horley v. Block, 27 How.
·(N. Y.) Pr. 97; Wolf v. Howes, 24 Barb. 174, 666; Faby
v. North, 19 Barb. 341; Jones v. Judd, 4 Const. S. C. 411;
·Griswold v. National Ins. Co., 3 Cow. 96; Cable v. McDan-
iel, 33 Mo. 363; Adams v. Trigg, 37 Mo. 141; Darrett v.
Dunnelly, 38 Mo. 492; Helm v. Philadelphia Ins. Co., 61
.Penn. 107; Howell v. Knickerbocker, 44 N. Y. 276;
Donald v. Piedmont and Arlington Life Co., 4 Big. 466;
Broom's Leg. Max. (6th Am. ed.) 178, 179; Wadsworth v.
Alcott, 6 N. Y. 64; Ins. Co. v. Hone, 2 Comst. (N. Y.)
235; Turner v. Burrows, 8 Wend. 144; Buckbee v. United
States Ins. Co., 18 Barb. 541; Mutual Benefit Life Ins. Co. v.
Ruse, 8 Ga. 534; Illinois Marine and Fire Ins. Co. v. O'Neill,
13 Ill. 89; New Hampshire Marine and Fire Ins. Co. v.
Rand, 24 N. H. 428; M—— Co. v. Partridge, 25 N. H.
.369; Wheeler v. Newbould, 16 N. Y. 393; Erwin v. Saun-
·ders, 1 Cow. 249; Wolfe v. Meyers, 3 Sandf. (N. Y.) 7;
Tibbitts v. Percy, 24 Barb. 39; Ruse v. Mutual Benefit Life
Ins. Co., 23 N. Y. 516; Trustees First Baptist Church v.
Brooklyn, 19 N. Y. 305; Bodine v. Ex—— Fire Ins. Co., 51
N. Y. 117; Goit v. National Protective Ins. Co., 25 Barb.
189.

Gantt, P. J., delivered the opinion of the court.

On March 5, 1870, Joachim Gaterman took out a policy
·on his life, with defendant, by which he agreed to pay the
·sum of $70 on the day of its issue, and a like sum on
March 5th in each following year, for the period of ten
years; in consideration of which the company agreed to
pay to him, should he survive and be alive on August 14,

1896, the sum of $1,000; and, in case of his death, the company agreed to pay that sum to Joseph, his son, within sixty days of his death. It was provided in the policy that, should the assured cease to pay the annual premium, the company would, upon the surrender of the policy, issue in place of it a paid-up policy on the life of the assured, as follows, viz.: After the payment of two annual premiums, two-tenths; after the payment of three annual premiums, three-tenths; and so on, according to the number of years paid in, not exceeding ten years. It was further provided that the policy was to become void if the said premiums are not paid, as hereinbefore mentioned, on or before twelve o'clock (noon) on the several days specified and appointed for the payment of the same." The assured died on March 11, 1873. The premium due on March 5, 1873, was not paid. Several excuses were offered for this non-payment:

1. It was alleged that it was, and always had been, customary and usual with defendant, and its agents, to accept and receive such premium within thirty days after the same matured; and the assured contracted with reference to, and relying on, this customary indulgence.

2. That it was customary for the company to notify assured of the day of payment. That this was omitted in this instance, and the assured thereby misled.

3. That the assured was led to believe, from the commutation clause and the payment clause in the policy, that it was non-forfeitable.

4. That the assured was prevented by the act of God from paying the premium when due, he being then in a dying condition.

5. That the payment was tendered on March 7, 1873, and refused.

It will be seen that these reasons were inconsistent. The first three may escape this criticism, as compared with each other; but, if the fourth was true, the others could have had no influence on the conduct of the assured, while, if

the first three influenced his action, his state on March
5th was not the reason of the non-payment of the pre-
mium.  Looking at each one separately, however, we see
no room for disapproving the action of the Circuit Court.

1. There was no evidence of any custom of which the
plaintiff could have the benefit, and no evidence was offered
to show such a custom.  It is conceded that if, on March
7, 1873, the assured had been in good health the premium
then tendered would have been accepted, and that such
acceptance would have conformed to the custom of the com-
pany in such cases.  Obviously the assured could not have
any advantage from the establishment of such a custom.

2. As to the failure to give notice of the premium becom-
ing due, no evidence was offered ; nor was evidence offered
of the custom of the company to give such notice.  It
would have been immaterial if offered.  Such notice is
always a mere voluntary courtesy, and the omission to give
it entails no consequences.

3. No time need be spent on the third reason.  The
assured cannot be allowed to set up a misunderstanding of
a very plain provision of the policy given to him.  The
sense in which, and the degree to which, his policy was not
forfeitable was very clearly defined.

4. The fourth reason cannot avail the assured.  The com-
pany insures him against certain hazards ; but of others he
takes the risk.  It is obvious that, if casualties did not some-
times occur to the advantage of the insurer, the business of
insuring lives would inevitably lead to the bankruptcy of the
company engaged in it ; which is only another way of saying
that all those who effected insurance in such companies
would lose their money.  It is of the essence of the business
that the underwriters, making a judicious calculation of the
chances of mortality, should, on the average, gain more
than they lose by taking risks on lives.  Among the possi-
bilities of gain, perhaps the largest is that which accrues
from lapsed policies.  Here the complete lapse is waived.

We say waived, because the company appears to have treated the insured as if the policy had been surrendered, and a paid-up policy claimed under the first clause in the instrument following the definition of the contract. There is no justification for demanding more than this.

The company has a clear right to take advantage of precisely such contingencies as prevented the assured here from paying the premium on March 5, 1873. The case cited by counsel for respondent (*Howell* v. *Knickerbocker Ins. Co.*, 44 N. Y. 276) has received the approval of the bench and bar throughout the country; and it is decisive, not only of the fourth point made by appellant, but of the first also.

5. The tender made on March 7, 1873, could not have any influence. At that time the *legal* right to pay the premium had expired, and the assured was confessedly dying. A *new* contract of insurance, under such circumstances, was out of the question. The judgment of the Circuit Court is affirmed, all the judges concurring.