MISSOURI CATTLE LOAN COMPANY v. GREAT SOUTHERN LIFE INSURANCE COMPANY, a Corporation, Appellant.—52 S. W. (2d) 1.

Division Two, July 1, 1932.

*Chas. M. Howell, Daniel V. Howell, Fred L. Switzer* and *Wm. H. Allen* for appellant.

*McCune, Caldwell & Downing* for respondent.

COOLEY, C.—This was an action in equity in the Circuit Court of Jackson County by which plaintiff, a Missouri corporation, sought to have set aside and adjudged ineffectual an alleged forfeiture of a life insurance policy and to have the policy adjudged in force and for general relief, in effect an action for restoration or reinstatement of the policy. From a decree in favor of plaintiff granting the relief prayed the defendant has appealed.

Defendant is a Texas corporation with home office at Houston, Texas, and at the times herein involved was duly licensed to do business in Missouri. On February 5, 1919, it issued to Lee L. Russell, then fifty-two years of age, the life insurance policy in question, insuring him in the sum of $100,000, payable to certain named beneficiaries. The policy contained a table of loan values and surrender options, and was assignable by the insured. It called for the payment of a premium of $4,397 annually, at the home office of the company on June 5. Russell paid the premiums to and including June, 1922. In July, 1922, he assigned the policy to this plaintiff, then called the Stock Yards Loan Company but which later changed its name to Missouri Cattle Loan Company. That assignment was to secure an indebtedness which Russell owed plaintiff. On December 29, 1924, Russell executed another assignment whereby he transferred to plaintiff absolutely "all right, title and interest in said policy which is to be the absolute property of said assignee, free and clear of all right, title and interest of the assignor in and to the same." Notice of each assignment was immediately given to the insurance company. When the first assignment was made in 1922 plaintiff notified the insurance company that it would thereafter pay the premiums, which it did to and including that due June 5, 1925, in this manner; as each annual premium came due plaintiff borrowed of defendant the then loan value of the policy, giving a policy loan note therefor, the amount of which was increased each year as the

loan value of the policy increased, and paid the balance of the premium in cash. When on June 5, 1926, the premium for that year became payable there was due defendant from plaintiff $15,572, plus one year's interest on such policy loan note, and the annual premium of $4397. Those obligations were not paid on that date and for nopayment of the premium defendant canceled and declared forfeited the policy.

Plaintiff claimed that it had relied upon an assurance previously given to it in March, 1923, by defendant that the latter would give it timely notice of the approaching due dates of the premiums and note and upon defendant's practice so to do and because thereof had overlooked paying the 1926 premium and renewing the note. In December, 1926, it discovered by an audit of its books that it had failed to pay the premium and the interest due and to renew the note. It at once wrote defendant offering to pay the amounts due, with interest, and to renew the note and asked that the policy be continued in force. Defendant replied that the policy had lapsed because of non-payment of the premium due June 5, 1926, and would not be reinstated except upon a medical examination of the insured acceptable to defendant. Plaintiff communicated with Russell and learned that he could not then pass a medical examination, his health having failed. It thereupon made tender of the sums that had become due on June 5, 1926, with interest, and offered to give a new policy loan note. The tender was rejected. It has been kept alive. There is no contention that it was insufficient or that defendant would not have been put *in statu quo* had the tender been accepted.

The court's finding and judgment, entered May 18, 1929, were as follows: After a general finding of the "issues in favor of plaintiff, and against defendant," the court found in substance that the beneficial interest in the policy in question had been assigned to and on June 5, 1926, was vested in plaintiff; the amounts due on June 5, 1926; that prior to said date defendant by its written assurance and by its "course of conduct and dealing" had led plaintiff to believe and plaintiff in reliance thereupon did believe that defendant would from time to time give plaintiff timely notice of the due dates of premiums and loan note so that plaintiff might pay the premiums and pay or renew the note and interest when due; that by reason of such assurance and conduct plaintiff had a right to and did believe that it would receive such notice in time so that it could make the necessary payments and avoid forfeiture of the policy and further believed that so long as it paid the premiums and renewed the note within proper time after it had been notified of the due date thereof, no forfeiture of its rights under the policy would result from its failure to pay the premium or renew the note when due if such

failure resulted from defendant's failure so to notify plaintiff; that defendant did not notify plaintiff prior to June 5, 1926, nor at any time that said premium and note would be due on said date; that plaintiff, relying upon defendant's said assurance and course of conduct, failed to have in mind the fact that the premium and note would be due on said date and because thereof failed to make the payment and renewal; that upon discovery of its oversight plaintiff immediately "to-wit, on December 17, 1926," tendered payment of the premium and all interest to date of tender, and offered to renew the note and pay interest thereon and to place defendant in all respects in as good position as it would have been in if the premium had been paid and the loan renewed on June 5, 1926, which tender and offer defendant refused and thereupon, for the first time, advised plaintiff that its rights under the policy were forfeited because of its failure to pay said premium when due; that the acts of defendant in refusing to accept the tender and "in attempting to declare said policy forfeited were illegal, wrongful, unauthorized and of no force and effect." There is a further detailed finding showing a proper and sufficient tender made by plaintiff at the trial. Judgment followed in this form:

"Wherefore, it is ordered, adjudged and decreed by the court that the attempted forfeiture by the defendant of said insurance policy hereinbefore described was and is unauthorized, unlawful, invalid and void and is set aside and for naught held, and that upon lawful tender to defendant by plaintiff of the premiums now due on said policy together with interest at the rate of six per cent (6%) per annum on four thousand three hundred and ninety-seven ($4,-397) dollars from June 5, 1926, to and including December 17, 1926, and upon lawful tender to defendant by plaintiff of the interest on fifteen thousand seven hundred and fifty-two ($15,752) dollars from June 5, 1926, until the date of such tender at the rate of six per cent (6%) per annum, and upon the tender to defendant by plaintiff of a renewal of the fifteen thousand seven hundred and fifty-two ($15,752) dollar note herein first mentioned, to be dated on the date of such tender and to mature on June 5, 1929, and in all other respects to be in form and substance as the said note for like amount herein first mentioned and to be executed by plaintiff and Lee L. Russell, said policy shall be in all respects in full force and effect according to its tenor and plaintiff shall thereupon be entitled to the full benefits thereof; that the costs of this cause be taxed against defendant for all of which execution shall issue."

The facts found by the court were sufficiently pleaded and we think the findings are sustained by the evidence, though defendant challenges the sufficiency of the proof of its alleged failure to give the notice referred to. The evidence on that point will be noticed later.

I. Defendant contends that the circuit court was without jurisdiction to render the decree it gave because: A.. "The policy of insurance not having matured and there being no actual controversy for decision in which a final judgment might be rendered, but only an action to determine future rights, the decree merely amounts to a declaratory judgment." B. The court by the decree assumes management and control of the internal affairs of a foreign corporation, and having no power to enforce such decree upon the officers of the corporation it has no jurisdiction to render the decree. C. This action is premature, since the insured is still living and a cause of action under the policy has not accrued.

B. Though not in the order designated in defendant's brief, we take first the contention that the judgment assumes the management and control of the internal affairs of a foreign corporation and is therefore beyond the court's jurisdiction. In support of this contention defendant cites State ex rel. Hartford Life Ins. Co. v. Shain, 245 Mo. 78, 149 S. W. 479; State ex rel. Wurdeman v. Reynolds, 275 Mo. 113, 204 S. W. 1093; State ex rel. Minn. Mut. Life Ins. Co. v. Denton, 229 Mo. 187, 129 S. W. 709; State ex rel. Lumber Co. v. Dearing, 180 Mo. 53, 63, 79 S. W. 454, and several cases from other states.

State ex rel. v. Shain, supra, was an action to prohibit a circuit judge from proceeding with a suit involving an insurance policy issued by a foreign mutual insurance company. The insured was required to pay certain assessments. He claimed that excessive assessments were being exacted and prayed that the insurance company be enjoined from assessing him beyond a certain rate, that it be required to render an accounting to him for the excess so exacted and for judgment for the amount of excess payments found to have been exacted. This court held that to determine and adjudge the correct assessments and grant the relief sought would require the court to investigate, overhaul and control the management of the internal affairs of the foreign insurance company which it could not rightfully do; also that injunctive relief could not be granted because injunction operates in personam and the officers of the corporation upon whom the injunctive process or punitive measures for its violation must operate were not within the court's jurisdiction and could not be reached by its process, and courts would not render a judgment they could not enforce. In support of its conclusions the court cited, among others, Clark v. Mut. Reserve Fund Life Assn, 14 App. D. C. 546, 43 L. R. A. 390; Condon v. Mut. Res. Fund Life Assn., 89 Md. 99, 44 L. R. A. 149; Taylor v. Mut. Res. Fund Life Assn., 97 Va. 60, 45 L. R. A. 621, 33 S. E. 385; Royal Fraternal Union v. Lunday, 51 Tex. Civ. App. 637. The cases cited in the Shain case were based on similar facts and support the conclusions

there reached. They, with two or three others of like effect, are cited and relied upon by appellants here.

In Castagnino v. Mut. Res. Fund Life Assn., 157 Fed. 29, the United States Circuit Court of Appeals (Sixth Circuit) had before it a similar case and held that the relief sought might be granted. It referred to the above mentioned cases which are cited in the Shain case (except the Texas case) and declined to follow them.

In North State Copper and Gold Mining Co. v. Field, 64 Md. 151, cited by appellant, the court stated the distinction between acts of a corporation which do and those which do not relate to its internal management, thus:

"Where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting, or through its agents, the board of directors, that then such action is the management of the internal affairs of the corporation, and in the case of a foreign corporation our courts will not take jurisdiction. Where, however, the act of the foreign corporation complained of affects the complainant's individual rights only, then our courts will take jurisdiction, whenever the cause of action arises here."

Taylor v. Mut. Res. Fund Life Assn., supra, quotes that statement with approval, saying that the Maryland case has been often cited with approval "and may be regarded as the leading case upon this subject."

State ex rel. v. Reynolds, supra, recognized the doctrine of the Shain case but held it inapplicable to the case then before the court because in that case the corporation, though organized in another state, had its principal office here and its directors and chief officers resided and its business was mainly done in this State. It was held subject to the same supervising control by our courts as a domestic corporation.

In State ex rel. v. Denton, supra, the facts were analogous to those in the Shain case and the same theory of law was applied. But in the course of its discussion the court in effect said that a foreign insurance company licensed to do business in this State may be called into court to answer a suit on a contract "and our courts have ample jurisdiction to compel performance of obligations by such companies."

The cases cited on this point by defendant do not support its contention in this case. They must be interpreted in the light of the facts upon which they are based. Here the amount of premium to be paid is a specific sum named in the policy about which there is and can be no dispute. It is not dependent upon assessments, by-laws or any facts or conditions requiring for its determination an over-

hauling or regulation of the internal affairs of defendant company. The relief sought and granted is not such that to make it effective the court must command the officers of defendant company to act or refrain from acting and be able to enforce its commands by punitive measures against such officers. So far as concerns this ground of objection the court was not without jurisdiction.

■ A and C. In the determination of the question whether or not an actual controversy existed in which a final judgment could be rendered and whether the judgment rendered was in effect a final or merely a declaratory judgment, the fact that defendant is a foreign corporation is not important. The character of the judgment in question, i. e., whether or not it is merely declaratory, would be determinable by the same principles were defendant a domestic corporation.

There can be no doubt that a real controversy existed. Defendant had canceled the policy and declared plaintiff's rights thereunder forfeited for nonpayment of the June, 1926, premium and refused to accept the premium or to reinstate the policy or recognize the contract of insurance as being any longer in existence. Plaintiff insisted that defendant's action was unauthorized and demanded that the premium be accepted and the policy restored. Valuable rights claimed by one and denied by the other were involved. The controversy was by no means moot or merely colorable. Cases such as State ex rel. Shackleford v. McElhinney, 241 Mo. 592, 145 S. W. 1139; State ex rel. Hahn v. City of Westport, 135 Mo. 120, 36 S. W. 610, and Fugel v. Becker, 2 S. W. (2d) 743, cited by appellant are not in point. So also we think Willing v. Chicago Auditorium Assn., 277 U. S. 274; Gordon v. United States, 117 U. S. 697, and other cases cited by appellant are distinguishable on the facts.

In a situation such as confronted plaintiff a policyholder may decline to recognize the cancellation of the policy, continue to take whatever steps may be appropriate to keep alive the offer to perform the contract on his part and when the policy matures by death of the insured sue thereon and in such action test the validity of the claimed forfeiture. But must he submit to such delay, inconvenience and hazard? We think not. Speaking of the rights of an insured where there has been a "wrongful cancellation, repudiation, forfeiture, or termination of the contract by insurer, and it refuses to receive premiums or by any act to longer recognize the policy as binding upon it," 3 Joyce on The Law of Insurance (2 Ed.), section 1659, says:

"The general rule, however, which is undoubtedly the result of the authorities, is this, that upon such wrongful cancelation, repudiation, forfeiture, or termination of the contract by insurer, insured has the right: 1. To consider the policy terminated and recover

its just value in a proper action therefor; 2. To institute an equitable proceeding to adjudge the policy in force, and the question of forfeiture can then be determined; 3. To tender the premiums, and when the policy becomes payable, an action may be brought upon the policy and the question of forfeiture be then tested."

6 Couch, Cyclopaedia of Insurance Law, section 1429, states the rule "supported by the weight of authority" in substantially the same way. That author states the second of the above mentioned three rights thus: ". . . he (the insured) may institute proceedings to have the policy *adjudged to be in force.*" (Italics ours.) To the same effect, see 32 C. J. p. 1263, sec. 461, and p. 1264, sec. 463; 14 R. C. L. p. 1014, sec. 193.

In Cohen v. N. Y. Mut. Life Ins. Co., 50 N. Y. 610, the defendant company had declared the policy canceled and forfeited for nonpayment of premiums and refused to receive premiums or further to recognize the policy as being in force. The plaintiff sued in equity asking that she be permitted to make the payments and that her policy be declared valid, or that the defendant be compelled to return the premiums paid with interest and for general relief. The trial court sustained a demurrer to the petition. The Court of Appeals reversed the judgment, holding that the petition stated a cause of action and that the court had jurisdiction. Among the reasons assigned for holding that the plaintiff could maintain an action in equity the court said:

"3. The plaintiff is entitled, if the right to pay the premiums and continue the policy still exists, to pay the arrearages and stop the accruing of interest, and to make the future payments as they accrue and become due without interest, and relieve herself as well of the risk and burden of retaining the money, wh'ch of right belongs to the defendant. 4. The contract of insurance, where the policy is to be kept alive by periodical payments, is peculiar, and the duty to pay and the obligation to receive are mutual. It is somewhat different from a simple obligation to pay money, a tender to perform which would bar an action upon it. So, too, a receipt or acknowledgment of the payment is customarily given, and is as essential as evidence of the continuance of the contract as is the original policy. The policyholder is entitled to some evidence of the performance of the condition on his part, if, as is believed, the universal usage is for the insurers to certify in some way the fact that the annual premiums are paid. 5. It is fit and proper that both parties to the contract should know their rights; especially is it important to the plaintiff and the insured that, if this policy is avoided, they may seek insurance elsewhere, and, if valid, that they may perform the conditions of the policy.

"In ordinary cases courts will not, in advance of any present duty, obligation or default, declare the rights and obligations of suitors; they will do it where peculiar circumstances render it necessary to the preservation of right. It was done in Baylies v. Payson, 5 Allen, 473. Courts of equity depart from the ordinary rules by which their jurisdiction is hedged in, in order to do equity between suitors; and whether a proper case is made for the exercise of the equitable powers of the court necessarily depends upon the circumstances." [50 N. Y. 625.]

In Meyer v. Knickerbocker Life Ins. Co., 73 N. Y. 516, the suit was in equity "to have the court declare existing and in force a contract of insurance . . . which the defendent claims is lapsed by nonpayment of the yearly premium." Judgment for the plaintiff was affirmed. The Cohen case was cited approvingly. Pertinent to appellant's suggestion here that to constitute a judgment in an equity case it must contain "an order that the defendant obey the judgment,"·enforceable "by attachment of the person and imprisonment for contempt for failure to obey the mandate of the court, as contained in the judgment," we find this concluding statement in the statement of facts in the Meyer case:

"The court found, as conclusion of law, that plaintiff was entitled to judgment, declaring the policy to be in full force, plaintiff to pay, within sixty days after entry of judgment, the past due premiums, with interest upon each from the time they became due and payable by the terms of the policy. Judgment was entered accordingly."

. The Cohen and Meyer cases were approved by the same court in Langan v. Supreme Council Am. L. of H., 174 N. Y. 266. The latter. case was a suit for damages for alleged breach of a contract of insurance issued by a foreign insurance company. The court held for reasons not necessary to state here that the plaintiff could not recover in that form of action, but said that the plaintiff "might resort to a court of equity and, upon the facts, ask its intervention in a decree which would compel the defendant to live up to its contract and which would restrain it from proceeding under its void by-law." The same principle was announced in Kelly v. Sec. Mut. Life Ins. Co., 186 N. Y. 16, and in Prichard v. Sec. Mut. Life Ins. Co., 124 N. Y. Supp. 650, 9 Ann. Cas. 661.

Day v. Conn. Gen. Life Ins. Co., 45 Conn. 480, 29 Am. Rep. 693, has been frequently cited in support of the principle that when an insurer has wrongfully declared the policy forfeited for nonpayment of premiums and refused to accept the premiums the insured may sue in equity "to have it adjudged to be in force." The action was at law to recover the premiums that had been paid on the theory that when the company wrongfully declared a forfeiture an implied promise arose or existed to repay the sums the insured had paid on

the policy. That relief was denied and the court stated the remedies available to the insured substantially as in Joyce on Insurance, supra.

In Royal Fraternal Union v. Lunday, supra, cited by appellant, while the relief prayed for was denied for reasons hereinbefore shown, the court said that the plaintiff might "institute a proceeding in equity and have the issue as to whether or not the policy has in fact been forfeited, or is still in force, judicially determined," citing the Meyer and Day cases, supra, and other authorities, and adding:

"The fact that the insurer is a foreign corporation, domiciled in a State different from that in which the action is brought, does not deprive the court of jurisdiction to render a decree determining the status of the parties to the contract."

The following additional cases also recognize the right of an insured, when the insurer has wrongfully canceled the policy and refused to receive premiums, to maintain an action in equity to have the policy adjudged in force: Brooklyn Life Ins. Co. v. Weck, 9 Ill. App. 358; Indiana Life Endowment Co. v. Carnithan, 62 Ind. App. 567, 109 N. E. 851; Amer. Trust Co. v. Life Ins. Co. of Virginia, 173 N. C. 558, 92 S. E. 706; Heinlein v. Imperial Life Ins. Co., 101 Mich. 250, 25 L. R. A. 627 (bill to revive a life insurance policy), following Tabor v. Ins. Co., 44 Mich. 324, which was a similar action; Davis v. N. Y. Life Ins. Co. (Cir. Ct. of App. 8th Cir.), 47 Fed. (2d) 1051, 1055; Castagnino v. Mut. Res. Fund Life Assn., supra; Elgutter v. Mut. Res. Fund Life Assn., 52 La. Ann. 1733, 28 So. 289.

Appellant argues that in most of the cases referred to the expressions to the effect that the insured has the right above indicated were. *obiter.* Even if so, which we need not decide, they reflect the views of the writers thereof and we think announce a just and sound principle.

In Greenwood v. N. Y. Ins. Co., 27 Mo. App. 401, the defendant, a foreign insurance company, had declared the policy forfeited for refusal by the insured to forward a premium to the defendant's home office, the plaintiff claiming he was entitled to pay to a local bank in which he had deposited the premium. The suit was to set aside the forfeiture, to restore the plaintiff to his rights under the policy and to require the defendant to accept the deposit. The trial court entered a decree adjudging that the defendant restore the policy and forward the necessary receipts up to date of judgment. The judgment was affirmed. The question of jurisdiction was not raised nor was it discussed in the opinion but evidently the Court of Appeals did not doubt the circuit court's jurisdiction. Appellant argues that the Greenwood case is impliedly and by necessary effect overruled by State ex rel. v. Shain, supra. We think, however, that the Shain case, interpreted in the light of the facts there in judgment, does not necessarily overrule the Greenwood case, at least so

far as the latter holds that the court, on the facts found therein. could validly adjudge restoration of the policy.

Green v. Sec. Mut. Life Ins. Co., 159 Mo. App. 277, 140 S. W. 325, was a suit in equity against a foreign insurance company to cancel an insurance policy and to reinstate a former one which had been surrendered for the one sought to be canceled through the fraud of the defendant's agent. The circuit court entered a decree setting aside the exchange of policies, annulling the new and reinstating the old policy, which was affirmed. The question of jurisdiction was not raised but the appellate court seems to have had no doubt on that point.

The policy in this case, though originally issued to a nonresident of the State, had been properly assigned to and was held by a resident corporation and the assignment had been recognized by defendant. Defendant corporation was duly licensed to do business in this State, amenable to the process and jurisdiction of its courts for the enforcement of its contracts held by citizens of the State, and appeared to the action. The court had before it the contract and the parties interested therein. Certainly it had jurisdiction to adjudicate the rights of the parties relative to that contract, at least so far as that could be done without interfering with the internal affairs of defendant company or the discretion of its officers which the decree herein does not attempt to do. For an interesting and instructive discussion of this question and collation of authorities see Frick v. Hartford Life Ins. Co., 179 Iowa, 149, 159 N. W. 247. In that case the Iowa court went farther than we have heretofore gone or are required to go in this case, holding maintainable upon an extensive review of authorities, an action similar to that in State ex rel. v. Shain, supra. The court's answer to the contention that the decree could not be enforced is likewise worthy of note:

"As to the further contention of appellant that the courts of Iowa would have no way of enforcing such decrees, we shall not assume in advance that defendant will not comply with any decree that may be entered. It is, of course, possible that the decree could not be enforced by contempt proceedings against the officers of the defendant company in another state. But the plaintiff's rights will be fixed, and he may pay or tender the assessments in the amount fixed by the court; and when the policies mature at his death the questions as to enforcing payment may be then litigated, at least as to any questions not adjudicated in this case." [Citing authorities.]

The judgment in this case does not, and we think need not in order to make it effective, require that the court be able to enforce affirmative action by the officers of the defendant company. It sets aside the cancellation and forfeiture of, and in effect restores or reinstates, the policy. In an action to *rescind* a contract, if no further

relief were sought, would not a judgment annulling the contract be sufficient? We see no reason why this judgment may not be deemed operative and effective to annul the cancellation and reinstate the policy without such action by defendant's officers as could be compelled only by contempt proceedings. We hold that the circuit court had jurisdiction and that its judgment was not void as being merely declaratory. From what has been said it follows also that this action was not premature.

██ II. Appellant contends that its demurrer to the evidence should have been sustained on each of the following grounds, viz.: (a) It owed no duty to the insured or the assignee to notify either of them of the due date of the premium or of the note and interest due June 5, 1926, and that plaintiff's failure to pay same when due justified cancellation of the policy; (b) that nevertheless the evidence conclusively showed that it sent notice of the due date of the premium to the plaintiff prior to June 5, 1926, and (c) that plaintiff "failed to use due or reasonable diligence" and is therefore "estopped to defend its failure to pay the premium when due on account of failure to receive notice."

Neither the policy nor the note by its terms requires the insurer to notify the holder of the policy of the due date of premiums or interest on the note. Plaintiff does not so contend. Its contention is that the defendant expressly promised plaintiff to give it timely notice in advance of the due date of the payments to be made, knowing that plaintiff would rely upon receiving such notice, and that prior to 1926 defendant habitually did give such notices, and that having by its promise and its conduct induced plaintiff to rely upon receiving notice it could not take advantage of its failure to give same and declare a forfeiture without having first informed plaintiff that the notices would be discontinued.

The policy contains certain non-forfeiture provisions which are not applicable under the facts of this case and need not be stated. The note or loan agreement in question was dated June 26, 1925, payable on or before June 5, 1926, was for the then full loan value or cash surrender value of the policy, and included the interest to June 5, 1926. It contained a provision that demand and notice were waived. However, it contained the further provisions that if not paid when due interest should be added at the rate of six per cent "to the next policy anniversary date subject to the terms and conditions of the policy," and that if further interest should not be paid when due it should be added to the principal loan and bear the same rate of interest; that "whenever the total indebtedness against said policy shall exceed its loan value said policy shall thereupon become void." The policy provided that after the payment of two

full years' premiums the insurer would "advance" upon the sole security of the policy a cash loan not exceeding the amount designated in the table of values, which amount increased annually, interest to be paid in advance, and if not paid when due "it shall be added to the principal and bear interest at the same rate;" that failure to pay such loan or interest "shall not render this policy void unless the total indebtedness hereon to the Company shall equal or exceed its loan value;" and that whenever the "total indebtedness against this policy shall equal or exceed its loan value the policy shall thereupon become void and such indebtedness shall thereby stand cancelled."

Prior to the first assignment of the policy to plaintiff. in 1922, it had been the unvarying custom of defendant to notify the insured of the approaching due dates of premiums and note interest. Following that assignment, to and including 1925, such notices were regularly sent by defendant to both the insured and the plaintiff and were always duly received. Defendant's evidence shows that its uniform practice had been to send such notices to all its policyholders. On February 3, 1923, plaintiff wrote defendant as follows (caption and signatures omitted):

"Re Policy #53094-L. L. Russell, Fort Worth, Texas.

"We being the assignee of this policy and are paying premiums on same, may we ask that *in the future notices of maturity of premiums* be mailed directly to this office, so that we may have notice, and the premiums will be promptly paid.

"This perhaps would avoid any delays or trouble in the payment of premiums, so will you please advise us that you will in the future send us *notices* of the premiums due."

Receiving no answer to that letter plaintiff again wrote defendant on March 8, 1923, as follows:

"Re: Policy #53094, Lee L. Russell, Fort Worth, Texas. Assigned to Stock Yards Loan Co., Kansas City, Missouri.

"As we hold assignment of this policy and are paying the premiums, will you kindly send us *notices of premiums due* so that we may have *them* in time to promptly remit you in payment of same.

"As we are taking care of this we feel that *notices* should be sent directly to us. Will you please advise us if you will *send us such notices* at the proper time."

It is not shown that defendant did not receive the letter of February 3. Under date of March 13, 1923, it answered plaintiff as follows:

"Policy #53094 L. L. Russell
"Stock Yards Loan Co.
"Kansas City, Mo.
"Gentlemen:

"We have your favor of March 8 regarding the above policy and wish to advise that *premium notices will be forwarded to you* as requested. There is a balance of $750 on the note for $3000 given in connection with the premium due June 5, 1922, which will be due May 15.

"The next annual premium as well as loan interest will be due June 5, 1923, and you will be notified in due time."

(Italics in above quotations ours.)

As promised in defendant's letter of March 13, timely notice was sent prior to June 5, 1923, and also, as above stated, in 1924 and 1925. Plaintiff's evidence showed that it relied upon receiving the notices and because of such reliance failed to keep in mind the due date of premiums and note interest; that it was able and willing to pay and would have paid but for the oversight so occasioned, as it desired and intended to keep the policy in force.

To prove that it sent the notices for June 5, 1926, defendant, in addition to showing that its records indicated the notices had been sent, called two witnesses, Miss Caruth and Miss Blaha, who performed certain duties in connection with the preparation of such notices for mailing and making the records thereof. In 1926 Miss Caruth was in charge of the department of defendant company in which premium and interest notices were made up and printed. She described in detail how such notices were customarily and regularly prepared from the company's books prior to the due dates of such premiums and interest and testified that when so prepared they were placed in a drawer and sent to a department presided over by Miss Blaha, after which she had nothing further to do with them. She also testified that if payments were not made when due it was defendant's custom to send a second notice; that a Mrs. Sartoris had charge of the department "sending out the second notices;" that after a policy had lapsed a notice of such fact would be sent out by a Mr. Matthews who had charge of the reinstatement department.

Miss Blaha testified that according to defendant's customary routine when the prepared notices came to her desk from Miss Caruth she "checked" them with certain records described, put them into envelopes which she had addressed and placed the envelopes, unsealed, in a mail basket on her desk and a mail clerk then took the mail basket containing the notices to the mailing room "on the next floor" where, she testified in chief, they were sealed and stamped and sent to the post office. Her testimony on cross-examination shows that she had no personal knowledge of how the notices were handled

or what became of them after they were taken from her desk to go to the mailing room. Neither Miss Caruth nor Miss Blaha had any specific recollection of preparing notices for Russell or the plaintiff, there being a great many notices of that character. No witness claiming to have personal knowledge of- the routine or procedure in the mailing room was called.

Mrs. Sartoris, in charge of sending out the customary second notices, and Mr. Matthews, who sent notices of lapsed policies, were not called to testify.

Plaintiff's evidence tended to show that neither the insured nor the plaintiff received any notice of the maturity of the premium or interest due June 5, 1926, nor any notice that the policy had been canceled or declared forfeited until after defendant had discovered its oversight in failing to pay the premium and had written defendant in relation thereto as hereinabove stated.

(a) The authorities are not uniform on the question of whether or not a custom of notifying the insured when the premium will fall due, such as the insured has reasonably come to rely upon, will amount. to a waiver of the requirement of payment on the precise due date or estop the insurer from declaring a forfeiture for nonpayment when the customary notice has not been given and the insured has not been notified that the custom is to be discontinued. The rule supported by the greater weight of authority and which we think most consonant with reason and justice, is thus stated in 3 Joyce on The Law of Insurance (2 Ed.), section 1332:

"If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the insured to believe that a clause for forfeiture for nonpayment will not be insisted on; but that the notice will precede the insistence upon the forfeiture, and the insured is in consequence put off his guard, such notice must be given, and if not given no advantage can be taken of any default in payment which it has thus encouraged, for the insured is entitled to expect the customary notification; and to mislead the insured by not giving such notice, and then insist upon a strict compliance with the conditions of forfeiture, constitutes, under such circumstances, a fraud upon the assured which the courts have refused in numerous cases to countenance."

Many cases are cited in support of the rule stated.

In New York Life Ins. Co. v. Eggleston, 6 Otto (96 U. S.) 572, 24 L. Ed. 841, the court had before it a similar question. The facts were somewhat different, the company in that case having discontinued its agency at the place where the insured resided and having regularly thereafter notified the insured where and to whom to pay. The cus-

tomary notice was omitted on the occasion involved, because of which the insured failed to pay and the insurer claimed the policy had become·void for such nonpayment. The court, speaking through Mr. JUSTICE BRADLEY, said:

"We have recently, in the case of Ins. Co. v. Norton [ante, 689], shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of·action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be· claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

Appellant insists that the Eggleston case on the point in question was virtually overruled or at least distinguished so as not to be an authority for plaintiff here, by Thompson v. Knickerbocker Life Ins. Co., 14 Otto (104 U. S.) 252, 26 L. Ed. 765, in which it was held that the company's failure to give notice according to prior custom was no excuse for the insured's nonpayment of the premium note there involved. We think not. The Thompson case was written also by Mr. JUSTICE BRADLEY and in it the above quoted statement of the Eggleston case is approved. There were facts in the Thompson case which we think distinguish it from the case at bar. Among other facts it is stated: "But a fatal objection to the entire case set up by the plaintiff is, that payment of the premium note in question has never been made or tendered at any time." It is also therein stated that the insurer may waive the forfeiture "or may by his conduct lose his right to enforce it," and ·pertinent to the case at bar: "It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted. But it must be a just and reasonable ground, one on which the assured has a right to rely."

The principle announced in the Eggleston case was approved and the Thompson case distinguished in Phoenix Mut. Life Ins. Co. v. Doster, 106 U. S. 30, 27 L. Ed. 65, and in Hartford Life & Ann. Ins. Co. v. Unsell, 144·U. S. 439, 36 L. Ed. 496. For other cases approving and applying the same ·principle see the following: Loyal Protective Ins. Co. v. Walker, 126 Ark. 296, 189 S. W. .1050; Mayer v. Mut. Life Ins. Co. of Chicago, 38 Iowa, 304, 18 Am. Rep. 38; Insurance Co. v. Hyde, 101 Tenn. 396, 48 S. W. 968; Kavanaugh v. Sec. Tr. & Life Ins. Co., 117 Tenn. 33, 96 S. W. 499, 10 Am. & Eng. Ann.

Cas. 680, citing many cases; N. Y. Life Ins. Co. v. Davis (Tex. Civ. App.), 154 S. W. 1184 (agreement and custom); Knoebel v. N. Amer. Acc. Ins. Co., 135 Wis. 424; Grant, for use, v. Ala. Gold Life Ins. Co., 76 Ga. 575; Elgutter v. Mut. Res. Fund Life Assn., 52 La. Ann. 1133, 28 So. 289; Ibs v. Hartford L. Ins. Co., 121 Minn. 310, 141 N. W. 289; Supreme Council etc., v. Winters, 108 Ky. 141; Heinlein v. Imp. Life Ins. Co., 101 Mich. 250, supra (notice promised); Selvage v. Ins. Co., 12 Fed. 603.

Appellant relies chiefly on Thompson v. Knickerbocker Life Ins. Co., supra, which we have noticed, and Gaterman v. Amer. Life Ins. Co., 1 Mo. App. 300. In the latter case the appellate court said there was no evidence offered as to failure to give notice of the premium becoming due, nor of the custom of the company to give such notice. That disposed of the point under consideration. The court then added the *obiter* statement, without discussion or citation of authorities: ''It (such evidence) would have been immaterial if offered. Such notice is always a mere voluntary courtesy, and the omission to give it entails no consequences.'' That statement is too broad. Such failure may entail consequences, depending upon the circumstances.

In Bergmann v. St. L. Life Ins. Co., 2 Mo. App. 262, where the customary notice of the due date of a premium had not been given, the court said that the company had so dealt with the insured as to induce a belief that forfeiture would not be insisted upon in case payment was not made upon the exact date and that, had payment been tendered and refused within a reasonable time, there would have been no forfeiture.

That an insurance company may, by a course of dealing which the insured has been induced to rely upon, create an estoppel to enforce a forfeiture for the insured's failure to pay promptly, notwithstanding the policy provides for such forfeiture, is in effect held in the following cases: James v. Mut. Res. Fund Life Assn., 148 Mo. 1, 127 S. W. 429; Goedecke v. Mut. Life Ins. Co., 30 Mo. App. 601; Hanley v. Life Assn. of America, 69 Mo. 380; McMahon v. Maccabees, 151 Mo. 522, 52 S. W. 384; Britt v. Woodmen, 153 Mo. App. 698, 134 S. W. 1073; Woolfolk v. Home Ins. Co. (Mo. App.), 202 S. W. 627, where the company failed to give promised notice of maturity of premium note. In the last named case the court cites many cases in support of its holding that the company was estopped from insisting on a forfeiture for nonpayment of the note.

In most of the cases to which we have referred the estoppel was created by a custom relied upon by the insured and without an agreement to give notice or to waive prompt payment of premiums. It is not necessary in this case for us to hold that such custom reasonably relied upon would alone create estoppel. We have here in addition

1010

to the uniform custom the express assurance by defendant to plaintiff, in the correspondence above quoted, that it would give such notices; a promise never withdrawn and in compliance with which it gave the notices until 1926, when, without warning, it failed to do so, as the trial court found, and declared the policy forfeited, knowing all the while, as it must have known, that plaintiff reasonably relied upon such notification. To hold in such circumstances that the insurer may thus take advantage of its own breach of good faith to the injury of the policyholder would be grossly unjust. We will not so write the law and we have found no case in which, under such circumstances, it has been so written.

Appellant argues that its letter of March 13, 1923, to plaintiff referred only to the next premium, due June 5 following, notice of which was given. The correspondence clearly had reference to all future premiums. It could not reasonably have been understood otherwise. Not only the obvious purpose of plaintiff's request but the language used so indicates. Plaintiff referred, not to one notice or one premium, but to *notices* and *premiums*. Defendant in its reply also stated that premium *notices* would be sent.

Appellant also argues that even if it is estopped to enforce forfeiture of the policy for nonpayment of the premium it had a right to do so for nonpayment of the note and interest. This is an afterthought. Even if it thought it could it did not declare the policy lapsed for that reason. In its letter to plaintiff of December 14, 1926, in response to plaintiff's letter of December 8, calling attention to the latter's oversight and failure to pay the June premium and renew the note because of failure to receive notice, defendant stated that the policy had lapsed for nonpayment of the premium due June 5, 1926. It said nothing about failure to pay or renew the note or to pay the interest. Moreover, as will be seen by reference to our statement of the applicable provisions of the policy and note, if the *premium* due June 5, 1926, had been paid, the policy could not have lapsed or been declared forfeited for nonpayment of note or interest. The loan value of the policy, to the advancement of which plaintiff was unconditionally entitled upon payment of that premium, would then have been $18,438, a sum far in excess of the then existing note and another year's interest; and by the terms of policy and note, if the interest for another year in advance had not then been paid it was to be added to the principal of the note, without entailing or authorizing forfeiture of the policy. Therefore, had the premium notice been given, and had plaintiff thereupon paid the premium as its evidence showed it would have done, there could have been no forfeiture. For like reasons and also because the payments of premiums and note interest and renewal of the note were due at the same time and conducted practically as one transaction, we deem

it of no consequence that plaintiff's letters to defendant requesting notification and defendant's reply giving assurance that notices would be sent mentioned only the premiums and did not specifically mention the note or interest.

(b) We shall not enter upon a discussion of the question where lay the burden of proof on the issue of whether or not notice was sent by defendant to plaintiff. We have indicated the evidence offered by defendant on that issue. In Goucher v. Carthage Novelty Co., 116 Mo. App. 99, 91 S. W. 447, the question considered was whether or not there was evidence showing the mailing of a certain letter. The plaintiff's evidence stopped where defendant's evidence in this case stops. In that case the stenographer who prepared the letter testified that she enclosed it in an envelope addressed to the defendant and placed it in the regular place for outgoing mail and that a Mr. Gray attended each day to the mailing of such letters. Mr. Gray did not testify. It was held that the evidence was insufficient to show that the letter was mailed. In this case the evidence, except for a statement of Miss Blaha that, as shown by her cross-examination, could only have been based on hearsay, leaves the notices in the mailing room of defendant. [See also Peirson-Lathrop Grain Co. v. Barker (Mo. App.), 223 S. W. 941.] Neither plaintiff nor Russell received any notice. The trial court found that issue against defendant and we think the finding amply sustained by the evidence.

(c) Appellant's contention that the plaintiff is "estopped" or precluded from relying upon failure to receive notice by its alleged lack of diligence in tendering the premium cannot be sustained. Defendant did not tender that issue by its pleading. Estoppel must be specifically pleaded. [See Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 288 S. W. 359; Coleman v. Ins. Co., 273 Mo. 620, 631, 201 S. W. 544; Thompson v. Lindsay, 242 Mo. 53, 76, 145 S. W. 472.] Moreover, the contention is without merit. Plaintiff acted promptly upon discovery of the fact that it had overlooked paying. That it did not sooner investigate and make the discovery should not, under the circumstances of this case, be held so inexcusable as to preclude plaintiff from relief merely because of such delay, or be deemed to raise a presumption that plaintiff intended to drop the insurance. The defendant was in nowise injured by the delay. Had it accepted plaintiff's tender when made it would have been in exactly the same situation as though the payment had been made when due. Generally, an equitable estoppel arises only when the person claiming it has been put into such position that he will suffer injury if the estoppel is not declared. It is not intended to work a positive gain to a party. Its office is to protect him from a loss which, but for the estoppel, he could not escape. [State ex rel. Moss v. Ham-

ilton, 303 Mo. 302, 317, 260 S. W. 466, 470; Kline v. Groeschner, 280 Mo. 599, 219 S. W. 648; Thompson v. Lindsay, supra; 10 R. C. L. 697, sec. 25.] And see also on this point, Alexander v. Continental Ins. Co. of New York, 67 Wis. 422, 30 N. W. 727, wherein a much longer delay was held not to preclude recovery, the plaintiff having failed to pay a premium note because the company had not notified her of its maturity as it had promised to do.

III. Appellant asserts that the insured, Lee L. Russell, was a necessary party to the suit, having a reversionary interest in the policy. Russell, who was called as a witness by plaintiff, testified on cross-examination that if the properties he had turned over to plaintiff realized more than his debt to plaintiff (a very remote contingency) he "would expect in fairness to get what was coming to him," but that he had no interest in the policy. But regardless of what he may have "expected" or testified, he had made an absolute assignment of all rights and interest in the policy to the plaintiff. It was so alleged in plaintiff's petition and defendant by answer specifically admitted that plaintiff was the "absolute and unconditional" assignee of the policy. The pleadings settled that question. Russell was not a necessary party.

IV. Neither is there any merit in appellant's further claim that the petition was insufficient on the ground that it alleged the policy was assigned as security for a debt and did not allege that the debt had not been paid. The petition alleged that the first assignment was as security but that by a later absolute assignment plaintiff became the unconditional owner.

V. Appellant charges error in the overruling of its motion to strike out plaintiff's amended petition on which the case was tried. The facts stated in the original and in the amended petitions were substantially the same, the only material difference between the two instruments being that in the original petition the prayer asked for relief which defendant and evidently the court construed as being in the nature of a mandatory injunction, while the amended petition did not ask injunctive relief. Defendant demurred to the original petition on two grounds; 1st, that it did not state facts sufficient to constitute a cause of action, and 2d, that defendant being a foreign corporation as appeared on the face of the petition, the court was without jurisdiction of subject-matter or parties "for the purpose of issuing mandatory injunction binding and enforceable in the premises." The court sustained the demurrer specifically on the second ground alleged. It did not attempt or purport to determine the first ground. It gave plaintiff leave to file an amended petition

which was done within the time allowed and at the same term of court. Defendant moved to strike out the amended petition on the ground that the ruling on the demurrer to the original petition was *res adjudicata* of the cause of action pleaded in the amended petition. The motion to strike was filed and overruled at the same term at which the demurrer had been overruled.

Appellant cites in support of its claim of *res adjudicata* Johnson v. United Railways Co., 243 Mo. 278, 147 S. W. 1077. In that case a suit had been filed in which the trial court had held on demurrer to the petition that the petition did not state facts sufficient to constitute a cause of action. On appeal that judgment had been affirmed by this court, 227 Mo. 423. Thereafter the plaintiff brought another suit alleging the same facts and asking for part, only, of the same relief. In the second suit, the appeal in which is decided in 243 Mo. 278, it was held that the judgment in the first suit was *res adjudicata,* the facts having been adjudicated therein and it having been adjudged that the plaintiff, on the facts stated, had no cause of action and was not entitled to *any* relief. In the instant case the court, upon the demurrer to the original petition, made no adjudication or ruling upon the facts or upon the question of whether or not the facts stated constituted a cause of action. It simply held that it was without jurisdiction to grant the relief prayed, a different proposition from that in the Johnson case. That ruling did not amount to an adjudication of the facts or of the sufficiency of such facts to constitute a cause of action. The plea of *res adjudicata* is not sustainable. Other reasons might be suggested for holding the plea invalid in this case, since the amended petition was filed in the same case pursuant to leave given and all the rulings in question were made at the same term of court, but the reason stated is sufficient.

The judgment of the circuit court should be and it is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.