# MARCH, 1940.

STATE OF MISSOURI AT THE SUGGESTION AND RELATION OF MRS. E. M. GEORGE HOWARD, IN HER INDIVIDUAL CAPACITY AND AS ADMINISTRATRIX OF THE ESTATE OF C. H. HOWARD, DECEASED, RELATOR, v. HONORABLE THOMAS W. MARTIN, JUDGE OF THE CIRCUIT COURT OF VERNON COUNTY, MISSOURI, RESPONDENT.—141 S. W. (2d) 186.

Kansas City Court of Appeals. April 1, 1940.

*B. C. Howard* for relator.

*Ewing, Ewing & Ewing* for respondent.

CAMPBELL, C.—Bruce Dodson, Attorney in fact for Subscribers at Casualty Exchange, and Bruce Dodson and Ralph Dodson, doing business as Bruce Dodson and Company, hereinafter called insurers, brought suit against C. H. Howard and E. M. George Howard, hereinafter referred to as the Howards, Clay Kelley, hereinafter designated employee, and Woody Swearingen, in the Circuit Court of Vernon County on January 14, 1939.

The second amended petition (the petition here involved) of the insurers alleged that on November 30, 1937, the Workmen's Compensation Commission, in a proceeding then pending before it, in which the employee was claimant and the Howards and insurers were defendants, made an award of compensation in favor of the employee as against the Howards in the amount of $2035.33 and denied compensation as against the insurers; that employee and the Howards appealed from said award to the Circuit Court of Vernon County, which latter court affirmed the award. Whereupon the Howards alone appealed to the Kansas City Court of Appeals; that the judgment appealed from was reversed and the cause remanded with direction to modify the award adjudging the insurers primarily liable

and the Howards secondarily liable; that, thereafter, on March 20, 1939, the circuit court rendered judgment in accordance with the aforesaid direction; that on March 16, 1938, said award was paid in full to the employee by Woody Swearingen "with funds of, and, on behalf of, the Howards," and that the employee then and there purported to assign said award to Swearingen.

The petition further alleged the clerk of the circuit court of Vernon County, at the request of Swearingen, has issued execution on said judgment directed to the sheriff of Jackson County, Missouri; that said sheriff has served said execution upon the Commerce Trust Company and attempted to attach the bank account of the insurers in said Trust Company.

The petition further charged the judgment was void, because it has been paid; because Swearingen acquired no title to the judgment under the purported assignment thereof; because the judgment was paid on behalf of, and with the funds of the Howards; that execution could not be legally issued at the request of either Swearingen or the employee.

The prayer was for a temporary stay of proceedings under the execution and garnishment pending the action; to determine and declare whether the judgment was valid, and for such further relief as the court deemed proper.

The second count of the petition alleged that insurers on August 1, 1936, issued to C. H. Howard, doing business as Nevada Baking Company, a contract of insurance, which, by its terms, insured the Howards against loss sustained by them on account of injury sustained by any of their employees in consideration of an "advance deposit" upon the estimated annual premium for such contract; that said insurance terminated on November 3, 1936, because of the nonpayment of the required premium; that one of the Howards, on December 11, 1936, called at the office of the insurers for the purpose of obtaining reinstatement of the policy; that insurers then stated to the said Howard that they would not reinstate said policy if any of the employees of the Howards had suffered an accident subsequent to November 3, 1936; that the said Howard falsely and fraudulently stated to insurers that no employee of the Howards had received injury subsequent to November 3, 1936, when in fact said Howard knew that one of said employees (Clay Kelley) had, on December 10, 1936, sustained a serious injury while at work in the bakery of the Howards and that such representations were made for the purpose of obtaining reinstatement of the policy; that insurers relied upon said statement, accepted the sum of $51.30, and that said amount was brought into court and tendered to the Howards. The second count further alleged the filing of the claim for compensation, the prosecution and the result thereof, the same as such facts were alleged in the first count. The prayer

of the second count was substantially the same as the prayer in the first count.

In May, 1939, each defendant filed demurrer to both counts of said petition, based upon the grounds that the petition did not state facts sufficient to constitute a cause of action. The demurrers were overruled and each defendant granted leave to plead on or before September 1, 1939. In June, 1939, the death of C. H. Howard (one of the Howards) was suggested and the cause was revived in the name of his administratrix, E. M. George Howard.

The relator on September 1, 1939, brought the instant proceeding in prohibition, in which it sought to have respondent prohibited from exercising further jurisdiction of the action brought by insurers on January 14, 1939. The second amended petition of insurers and the proceedings thereunder, as above stated, were made a part of the application. The application further charged that the insurers in their suit proceeded under the Missouri declaratory judgment law; that the rights and liabilities of the parties under the policy was fixed by the final judgment rendered in obedience to the mandate of this court, and the respondent lacked jurisdiction to render any judgment save the one which this court directed him to enter.

Preliminary rule was issued directing that respondent desist and refrain from proceeding further in the action brought by insurers until the further orders of this court. Thereafter respondent filed demurrer to the preliminary rule upon the grounds the application for the writ failed to state facts sufficient to constitute a cause of action; that the facts stated in the application show, as a matter of law, that respondent had authority to proceed in the insurers' suit.

In determining whether respondent had jurisdiction of the insurers' suit, we must accept as true the allegations of the second amended petition. According to the petition the insurers issued a policy of compensation insurance to the Howards which was cancelled on November 3; that employee sustained a compensable injury on December 10; that on the next day one of the Howards, acting for both of them for the purpose of inducing insurer to reinstate the policy, falsely and fraudulently represented to insurers that none of their employees had sustained injury subsequent to November 3; that relying upon such representations insurers reinstated said policy. From these allegations, which for present purposes must be accepted as true, it is plain the reinstatement was procured through fraud; that being so obtained the policy was not binding on the insurers for the reason fraud vitiates everything it touches. The relator, however, says that when respondent, under the direction of the appellate court (Kelley v. Howard, 123 S. W. (2d) 584) rendered judgment adjudging the insurers primarily liable and the Howards secondarily liable, such judgment was final and conclusively determined the rights and

liabilities of the parties to the judgment; that if the judgment were paid by the Howards they were entitled to execution thereon.

In the case of Phelps et al. v. Scott et al., 30 S. W. (2d) 71, the facts disclosed in the opinion are, the Bank of Aurora obtained a judgment against Phelps, Scott and others, each of whom was a surety on the bond upon which the judgment was based. Scott paid the judgment and had it assigned to her son. Phelps and two others of the judgment defendants brought suit against Scott and others to have the judgment adjudged paid and satisfied of record upon the grounds that the payment of the judgment by Scott extinguished the debt, and upon the ground that the execution of the bond by Phelps was procured by the false representations of Scott. Phelps also filed motion to quash execution issued on the judgment and alleged therein the same facts as were relied upon in the suit. The suit and motion were tried together. The court held that payment of the judgment by Scott did not extinguish and satisfy the judgment as to Phelps for the reason the latter was the cosurety of the former, and that Scott was entitled to have his right against his cosurety enforced by execution. Thus when the Howards, who were secondarily liable under the employer's judgment, paid the judgment as alleged in the second amended petition they were entitled, absent any other fact, to execution against the insurers. However, relator says in this court that:

"As a matter of fact, the allegation that the judgment was paid with the money of the Employers is not true, as the judgment was paid in full to Clay Kelley by Woody Swearingen, who acted without the knowledge or consent of the Employers, and advanced the full amount of the judgment upon consideration of an assignment of the judgment. The statute prohibiting assignment of judgments in compensation cases under the Missouri compensation law is for the benefit of the employees intended to protect the employee from making sale of the judgment at a great discount through necessity, pending prolonged litigation. There is no question involved of protecting the employee in this case, as he has received payment in full, but the consideration for the payment was an assignment of the judgment, and if that assignment is void, then of course the innocent third party who bought the assignment and paid for it in ignorance of its invalidity would be entitled to recover from the employee the consideration paid for a void assignment."

If the quoted statement is correct, then relator has no right or interest in the judgment and cannot enforce it by execution.

The other issue in the Phelps case was whether or not Phelps was induced to execute the bond (then in judgment) by the false representations of Scott. In ruling that question the court held that Phelps in his petition and motion "invoked equitable relief and alleged facts calling for such relief . . . he (Phelps) invoked the equitable jurisdiction of the court and presented facts and issues

properly cognizable in a court of equity. . . ." Keeping in mind the fact that Phelps sought to set aside the judgment upon the grounds his signature to the instrument upon which the judgment was rendered was procured through the fraud of his cojudgment debtor Scott, and that such fraud called for equitable relief, impels us to hold that insurers may in equity have determined the question whether or not the reinstatement of the policy was obtained by the alleged false and fraudulent representations of the Howards, from which it follows that respondent in taking cognizance of insurers' action acted within his jurisdiction.

In the trial of the compensation claim before the Workmen's Compensation Commission the insurers sought to have the commission find the reinstatement of the policy was procured through the fraud of the Howards and the commission evidently sustained that defense, but as the commission lacked jurisdiction to determine the question of fraud, its finding was of no force or effect. It is not claimed the insurers, prior to the rendition of the judgment of March 20, 1939, could not have maintained action in equity to test the validity of the reinstatement of the policy (Missouri Cattle Loan Co. v. Great Southern Life Insurance Co., 330 Mo. 988, 52 S. W. (2d) 1), and as the Howards and the insurers are the only ones now having any interest or concern in the policy or judgment, no sufficient reason exists for denying insurers right to have determined whether the reinstatement was or was not invalid.

The relator contends the insurers' action is predicated on the Declaratory Judgment Law, Law of Mo., 1935, p. 218, and that such an action cannot be maintained under the act. We need not determine these questions for the reason the second amended petition, under the holding in the Phelps case, pleaded facts calling for equitable relief.

The parties cite many cases from other jurisdictions. We will not analyze any of them for the reason we could not be influenced by them if they are not in harmony with the Phelps case.

Our preliminary rule should be and it is discharged and permanent writ denied. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. Preliminary rule should be and it is discharged and permanent writ denied. All concur.