JAMES LAWRENCE FRENCH, RESPONDENT, v. THE FRANKLIN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—164 S. W. (2d) 90.

Springfield Court of Appeals, July 27, 1942.

*C. Wallace Walter* and *Mann & Mann* for appellant.

*James H. Keet* for respondent.

BLAIR, P. J.—This is a suit in equity seeking to set aside the forfeiture of an insurance policy. The original petition was filed March 24, 1941. The trial chancellor set aside the forfeiture and declared the insurance policy to be in full force and effect upon

payment by plaintiff of premiums from the due date. Defendant (appellant here) duly filed its motion for new trial and, upon same being overruled, appealed to this court.

The facts are really not in dispute. The case was submitted to the chancellor solely on the evidence of the plaintiff (respondent here). The parties will be referred to as below.

Plaintiff exchanged a term policy of insurance for $3000 for the ordinary life insurance policy in suit on November 28, 1939, with a premium of $74.28 payable in advance on September 24th of each year, and plaintiff, as he was permitted to do, elected to pay such premium quarter-annually. Plaintiff did not pay the premium due on September 24, 1940, nor within the grace period of thirty-one days thereafter, and defendant declared a forfeiture. Plaintiff was then uninsurable and could not be reinstated upon physical examination because of his physical condition. Plaintiff tendered the quarter-annual payment due on said policy after the forfeiture by the insurance company about October 31, 1940; but receipt of said premium was refused by defendant on the ground that the rights of plaintiff under the policy had lapsed for non-payment of the premium due.

In his trial petition plaintiff offered to pay the premiums due on said policy and agreed to pay future premiums thereon and prayed the chancellor to decree the attempted forfeiture to be null and void and to reinstate said policy.

Defendant's trial answer admitted the issuance to plaintiff of the policy in suit and attempted to justify the forfeiture of said policy under the terms of said policy.

While appellant complains of the alleged improper admission of evidence in its assignments of error, we will consider first the assignments which go to the right of respondent to have any judgment at all, on the evidence admitted by the trial chancellor.

It seems not to be controverted that the local agent of defendant from time to time verbally called the attention of plaintiff to the fact that the grace period for the payment of premiums on his policy was about to expire, and that thereupon plaintiff would pay the premiums then due before such grace period terminated, and such local agent did not so notify plaintiff, as he usually had done, within the grace period after September 24, 1940; and the plaintiff testified that the written notice, mailed to him about fifteen days before the termination of such grace period, was not received by him until after such grace period had expired, with the lamentable result that the forfeiture was declared on said policy by defendant, and plaintiff could not then be reinstated under the terms of said policy on account of his physical condition.

There is no evidence whatever that any premium under this or any previous policy had been paid by insured or accepted by defendant after the grace period had terminated. All that the evidence tended

to show is that insured had theretofore been notified by the local agent when such grace period would terminate and that such notice by the local agent was not given before the forfeiture of said policy was declared and that insured relied on the local agent telling him when the grace period would expire. There was no evidence that the local agent ever promised that such notice would be given or that the insurance company, other than possibly its general agent, ever had notice of the habit or custom of the local agent to notify insured of the date of the expiration of the grace period. There was no evidence whatever that the insurance company knew that plaintiff relied on such verbal notice of the local agent.

Plaintiff's theory of his right to have such forfeiture declared null and void is set forth in his trial petition as follows:

''Plaintiff further states that defendant by its said promises and the said course of conduct in dealing led plaintiff to believe, and plaintiff in reliance thereon did believe that defendant would from time to time give timely notice by personal visits or telephone calls to plaintiff of the date on which each period of grace referred to in said notices would terminate so that plaintiff would not overlook paying the premiums prior to the end of each period; that defendant knew plaintiff would rely on receiving said notice; that, by reason of such promises and course of conduct in dealing, plaintiff, induced thereby, had a right to and did believe that plaintiff would receive such notice in time so that he would not overlook making the necessary payments on time, and that so long as plaintiff paid the premiums within the proper time after he had been notified of the time on which each particular period of grace ended, no forfeiture of plaintiff's rights under the policy would result from his failure to pay the premium within its period of grace, if such failure resulted from defendant's failure to so notify him in the manner hereinabove set forth; that defendant did not timely notify plaintiff in said manner prior to October 24, 1940, the date of termination of the period of grace allowed by the policy for paying the premium which had become due and payable on September 24, 1940, nor at any time, of the date on which said period of grace would terminate; that defendant at no time gave plaintiff any notice that defendant would discontinue giving the customary notice; that defendant reasonably should have known and did know that plaintiff did and would rely on defendant's said assurance and course of conduct; that plaintiff, being put off guard, and on account of said reliances by plaintiff and failure by defendant to give said notice, failed to have in mind the fact that the period of grace for payment of said premium would terminate on October 24, 1940, and because thereof failed to make the said payment; that the failure of plaintiff to pay said premium was caused by defendant's failure to give the aforesaid required notice; that upon discovery of his over-sight plaintiff immediately, to-wit, on or about

October 29, 1940, tendered to defendant payment of the premium and all interest to date of such tender, . . . ''

After making admission of certain undisputed facts, defendant's trial answer pleaded certain terms of the policy as follows:

''A. This insurance is Granted in consideration of the application herefor, which is hereby made a part of this contract, and of the payment in advance of the premium of Seventy-four and 28/100 Dollars to provide term insurance and legal reserve, if any, for the year beginning on the twenty-fourth day of September, 1939, which is the first policy year, and of the further payment in advance of a renewal premium of the same amount on the anniversary of said date in every year thereafter during the continuance of this Policy.

''B. GRACE PERIOD: A grace of thirty-one days, without interest charge, will be allowed for the payment of every premium after the first, during which period this Policy shall remain in force.

''C. PREMIUMS may be paid annually, semi-annually, or quarterly, in advance, each semi-annual or quarterly premium being in accordance with the rates in use by the Company at date of issue hereof. The Insured may change from one to another of such modes of payment. Premiums are payable at the Home Office of the Company in the City of Springfield, Illinois, or to a designated collector, but in any case only in exchange for the Company's receipt therefor, signed by the President or Secretary, and counter-signed by such collector. Failure to pay when due any premium or any note given therefor, shall cause this Policy to cease and determine except as herein provided, and all payments made thereon shall remain the property of the Company.''

''GENERAL PROVISIONS.

''Section

''K. (1) Only the President or Secretary has power in behalf of the Company (and then only in writing) to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the Company shall not be bound by any promise or representation heretofore or hereafter given by any agent or person other than the above.

.     .     .     .     .     .

''(7) This Policy and the application herefor (a copy of which application is attached hereto) constitute the entire contract between the parties hereto. All statements made by the Insured shall in the absence of fraud be deemed representations and not warranties, and no such statement shall avoid the Policy unless it is contained in such application.''

The policy containing such provisions was afterwards introduced in evidence by the plaintiff.

Under the terms of said policy defendant had the right of forfeiture of the policy for admitted non-payment of premiums, and only the course of dealing or conduct of such local agent could possibly pre-

vent the exercise of the right of such forfeiture. So the question is whether the terms of said policy could be modified or changed by the conduct of the local agent. The general agent of defendant may have known of the custom of the local agent. Under the testimony in this case, if properly admitted, we are bound to find that at least it was the custom and the conduct and the course of dealing of such local agent, and possibly even with the knowledge of the general agent, to notify the plaintiff verbally of such final expiration date before plaintiff paid the specified premium. Could the terms of the policy be thus modified?

In the policy in suit we find Section K (1), as heretofore quoted from defendant's trial answer, as follows:

"Section K. (1) Only the President or Secretary has power in behalf of the Company (and then only in writing) to make or modify this or any contract of insurance, or to extend the time for paying any premium, and the Company shall not be bound by any promise or representation heretofore or hereafter given by any agent or person other than the above."

Section 9 of Exhibit "B", which was a contract of the local agent Lloyd with general agent Cowden, and approved by defendant, was as follows:

"Second party is not authorized to make, alter or discharge contracts for first party or the Company, except as herein specifically provided, or to waive forfeitures, grant permits, make extra rates for special risks, or bind first party or the Company in any way, and is not authorized to make any endorsement on or attach any instrument by way of illustration or otherwise to the policies of the company, or to incur any indebtedness in the name or on behalf of the first party or the Company, or to receive any moneys due, or to become due, to first party or the company, except on receipt signed by the President or Secretary of the Company, without first obtaining from the Company permission in writing so to do. The powers of second party shall extend no further than are herein expressly stated."

Section 10 of Exhibit "C" was essentially the same as Section 9 of Exhibit "B" above quoted. Hence, we must conclude that the local agent Lloyd had no express authority under the policy in suit or under either of his contracts of employment to alter the policy in suit in any way, and, if defendant had no authority to forfeit the policy for non-payment of the premium on and after the grace period of thirty-one days from September 24, 1940, it must be because the conduct and course of dealing of such local agent, with the possible knowledge of defendant's general agent, had been such that defendant was estopped from declaring a forfeiture of said policy for non-payment of the premium due thereon, when the same was due under the terms of the policy itself. We think defendant had such right and that the chancellor clearly erred in setting such forfeiture aside.

Respondent chiefly cites and apparently relies on the case of Missouri Cattle Loan Co. v. Great Southern Life Ins. Co., 330 Mo. 988, 52 S. W. (2d) 1. But, in that case, defendant itself, not a mere local agent, had definitely promised the assignee of the policy in writing that notice of the due date of the premium would be given to it, and plaintiff' offered testimony tending to show that no such notice was given for the payment of the premium due before the forfeiture was declared and that plaintiff relied on such notice and the course of dealing and the conduct of defendant in giving such notice and that plaintiff failed to pay the premium due for claimed lack of such notice. The fact that the insurance company itself in that case agreed to give such notice, and did give such notice for two or three years, entirely distinguishes that case. In the case at bar, there is no evidence that defendant insurance company even knew of the practice of its local agent to remind plaintiff that the grace period was about to expire and payments of premiums were always theretofore made by plaintiff before the grace period expired.

Judge COOLEY, who wrote the opinion in 330 Mo., cited a number of cases in support of his conclusions. We have read and studied each and every one of such cases and we think every one of them is distinguishable from the case at bar on their particular facts. In those cases, either by express agreement or course of conduct of the insurance company (the particular insurance company itself and not the conduct of a local agent), such insurance company was held to have waived the right of forfeiture.

We will refer to several of the cases relied on by Judge COOLEY in the Missouri Cattle Loan Co. case.

Judge COOLEY first said:

"The authorities are not uniform on the question of whether or not a custom of notifying the insured when the premium will fall due, such as the insured has reasonably come to rely upon, will amount to a waiver of the requirement of payment on the precise due date or estop the insurer from declaring a forfeiture for nonpayment when the customary notice has not been given and the insured has not been notified that the custom is to be discontinued. The rule supported by the greater weight of authority and which we think most consonant with reason and justice, is thus stated in 3 Joyce on The Law of Insurance (2 Ed.), section 1332:

" 'If a life insurance company has been in the practice of notifying the insured of the time when the premium will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the insured to believe that a clause for forfeiture for non-payment will not be insisted on, but that the notice will precede the insistence upon the forfeiture, and the insured is in consequence put off his guard, such notice must be given, and if not given no advantage can be taken of any default in payment which it has thus encouraged, for the insured is entitled to expect the cus-

tomary notification; and to mislead the insured by not giving such notice, and then insist upon a strict compliance with the conditions of forfeiture, constitutes, under such circumstances, a fraud upon the assured which the courts have refused in numerous cases to countenance.'"

Judge COOLEY then cited and quoted from New York Life Ins. Co. v. Eggleston:

"Justice BRADLEY, said:

"We have recently, in the case of Ins. Co. v. Norton (ante 689), shown that forfeitures are not favored in the law; and that courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action, on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture.'"

The Eggleston case does not help respondent. That case is easily distinguishable from the case at bar.

In the case of Phoenix Life Insurance Company, cited by Judge COOLEY in 330 Mo., the general agent of the insurance company sent the notice for several years to the insured and the premiums had been accepted by the insurance company in arrears several times. In 1876 notice never reached the insured before his accidental death a few days after the premium was due. Justice HARLAN said:

". . . it was, we think, the Company's duty, under any fair interpretation of its contract, having received information as to the postoffice of the insured, to give seasonable notice of the amount of dividends, and thereby inform him as to the cash to be paid in order to keep alive the policy."

These facts distinguish the Phoenix case from the case at bar.

In the Hartford Life & Annuity Ins. Co. v. Unsell case, also cited by Judge COOLEY, the proof was that the insurance company itself, not a mere local agent, had several times prior to the death of the insured, accepted the premises due in arrears. Justice HARLAN approved the trial judge's charge, as follows:

"The plaintiff comes in, however, and says: 'Conceding that this contract reads in this way, the company by its conduct waived the necessity of a strict compliance.' She does not say the company so said to her, or to her husband. 'We do not insist upon this; we waive this;' but she says that the company so acted, so conducted itself in its dealings with her husband that he, as a prudent, reasonable man, did believe, and had the right to believe, that payment on the very day specified would not be insisted upon. Of course we speak by

our actions, just as much as we do by our words; and although there may be no spoken word, no written word, declaring a waiver, yet it may be that a man by his conduct, his course of dealing, justly and fairly leads the other party to believe that he does not care about a strict compliance. That is what this plaintiff says was the case here; that while the contract reads 'payment must be made on specified days,' yet the company did not insist on such payment. It did, when her husband was alive and well, take the dues from him after the time specified and permit the policy to continue in force, and that it did so until he had a right, as a reasonable man, to believe, and did in fact believe, that that was to be the rule in the future. I do not think that any particular number of instances, one or more, can be said as a matter of law to make or not make a waiver. It is a question for you, as reasonable men, 'to consider what did the company intend; what would its conduct make a reasonable man believe in reference to it. . . .''

The facts in that case readily distinguish it from the case at bar.

In the Loyal Protective Insurance Co. v. Walker case, cited by Judge Cooley, it was a question of fact, which the jury decided in plaintiff's favor, whether any notice whatever was sent before the forfeiture was declared. Smith, J., said:

"In the letter to appellee notifying him of his acceptance as a member, written by the secretary of the insurance company for that purpose, the following statement appears:

"'Your quarterly premiums will be due on the first business day of March, June, September, and December in each year, and notices for same will be sent you thirty days in advance.'

"Appellant not only admitted its custom to send this written notice, but offered proof to show that the notice had, in fact, been sent appellee of this particular payment. However, that question was submitted to the jury under an instruction which told the jury to find for the company if they found such notice had been sent. . . .

"The letter inclosing the remittance was received at the home office of the company on December 18, 1913. The custom of giving the notice is undisputed, and the promise to continue to do so is contained in the notification of appellee's acceptance as a member, and his reliance upon this promise was established by his own evidence."

That case is easily distinguishable on its facts from the case at bar.

In the Mayer v. Mutual Life Ins. Co. case, cited by Judge Cooley, the insurance company had received several premiums in arrears contrary to the terms of the policy, which required that such premiums be paid on a fixed date. Day, J., said:

"Now it must strike every reasonable mind, that a majority of ordinarily prudent persons, who had been customarily notified of the time when premiums upon their policies became due, and who had received no notice of an intention to abandon the customary course, would, in a particular case expect and await a like notice. And if

such is the reasonable and natural result of the previous dealings of the company, it must govern its future conduct so as to accord with the reasonable expectation thus created.''

That case is thus distinguishable from the case at bar where the premiums, so far as the evidence discloses, had never been received by the insurance company in arrears.

In the case of Hartford Insurance Company v. Hyde, cited by Judge COOLEY, the facts were that the insurance company for twelve or thirteen years had given notice to the insured of the amount of dues and mortuary calls that must have been paid by him, and, so the jury found, the insurance company failed to give such notice in 1897, in spite of the fact that witnesses for appellant in that case testified to facts suggesting that such notice had also been given in 1897. MCALISTER, J., approved the following instruction to the jury and said:

''The third assignment is that the court erred in instructing the jury, viz: 'If you should believe, from the evidence in the case, it was the uniform custom and course of business of defendant company to notify its policy holders, especially the assured, the said F. S. Hyde, that annual and quarterly dues were due and payable at stated times; and the course of dealing in this regard was so long and of such a character as to induce Mr. Hyde to believe a forfeiture would not be insisted upon, unless notice was first given; and if it was the uniform custom of the company to give notice of the payment of such assessments and quarterly dues, and to include the two as a part of the account so stated, and not as a separate account—then the assured was not bound to pay said annual or quarterly dues until such notice was mailed.' It is insisted this charge is erroneous for the reason the dues were payable quarterly, and the insured had carried the policy long enough to know when the dues were payable. It is insisted that the mere fact that notice of the quarterly dues was included in the same notice given for the payment of mortality calls under the custom of the company is not sufficient to change the rule of law.''

The Tennessee Supreme Court then held that the insurance company had waived the requirement that dues and mortuary calls should be paid on the specified date. The case is quite different from the case at bar on its facts.

In the case of Kavanaugh v. Ins. Co., cited by Judge COOLEY, notice of premium and maturity of notes had been mailed for many years to assignee of the policy and the chancellor refused to set aside the forfeiture, although the testimony tended to show that the usual notice was not given before the forfeiture was declared, and the trial judge was reversed by the Tennessee Supreme Court. After citing and considering many cases, NEIL, J., said:

''Therefore the courts have always seized upon every reasonable circumstance presented in a case to prevent the taking effect of a

forfeiture. In the case of a miscarriage of the mail, the insured performs his duty if, upon subsequently receiving notice, he promptly complies by paying the premium due.''

The facts in that case were much stronger against the forfeiture than in the case at bar.

In the case of Mutual Life Ins. Co. v. Davis, cited by Judge COOLEY, plaintiff was the assignee of insured and had paid all of the premiums upon notice and said that he had no such notice before the forfeiture was declared. Among other things, CRAWFORD, J., speaking for the Court of Civil Appeals of Texas, said:

''As we view the evidence disclosing the course of dealing which uniformly obtained between the parties, the defendant owed plaintiff the duty to present the premium for collection at plaintiff's office. This is rendered certain by the undisputed testimony showing that all premium receipts upon all of the policies had been so presented to the plaintiff and paid by it, with the exception of the premium receipt in question. The correspondence between the parties definitely shows that the understanding of each of them in that respect was the same. The plaintiff understood that it would pay upon presentation of the premium receipt at its office, and the defendant understood that such premium receipt should be so presented to the premium. The testimony further shows that it was the duty of the defendant, in the event any premium receipt upon any of said policies should, for any reason, be returned unpaid to its general agents in San Antonio, to notify the plaintiff of that fact and afford it an opportunity to pay the same. Such was the course that such general agents pursued, both before and after the event in question.''

We could doubtless extend this opinion to great length by citing and quoting from decisions of other states, but the rule seems to be established by the Missouri Cattle Loan Company case, and the cases from other states, that, where the insurance company has adopted a course of conduct of giving notice or receiving premiums in arrears or specifically agreed that it will give such notice and insured has relied thereon, no forfeiture may be declared until such notice has been given. In none of those cases has such forfeiture been denied where a mere local agent has been in the habit of calling the attention of the insured to his duty under the contract of insurance to pay the premiums as agreed in the policy.

Let us see what the Missouri cases have held in other cases cited by Judge COOLEY in 330 Mo.

In Bergmann v. St. Louis Life Insurance Co., 2 Mo. App., the principle was recognized. There the insurance company had previously received premiums and interest in arrears; but the judgment for plaintiff on the policy was reversed, because interest was far in arrears. That was a suit on the policy after the death of insured. BAKEWELL, J., said:

"It is clear that the defendant in this case had so dealt with deceased as to induce a belief that the claim of forfeiture would not be insisted upon, in case payment was not made on the exact day; and had payment been tendered and refused, within a reasonable time, there would have been no forfeiture. The stipulations in the contract, as to time of payment, were not considered as of its essence, and the contract did not become void because the interest was not paid on the very day. The acts and conduct of the parties themselves gave the contract this construction. This is settled in Missouri. But no tender of the interest was made at any time. Three months elapsed without a tender, and meanwhile the insured died. In not paying at the exact time, he took the risk of death occurring in the interval."

There the insurance company itself had accepted the premiums and interest in arrears and that case is readily distinguishable from the case at bar on account of such fact. Here there is no evidence that the premiums had ever been received in arrears, or even that the insurance company itself knew that its local agent had ever reminded insured that the grace period was about to terminate.

In the case of James v. Mutual Reserve Fund Life Ass'n, cited by Judge COOLEY, there was testimony, which the jury was authorized to accept, that several premiums had been paid in arrears. MARSHALL, J., said:

"Of the fifteen assessments which had been paid prior to June, 1893, only six receipts were produced, five of which showed they were paid before the expiration of the thirty days, and one was paid two days after the limited time had expired. As to when the other nine payments were made, we have only the evidence of the plaintiff, who says she had paid some as late as the 2d, 3d and 4th of the month, after the limited time had expired. Her testimony in this regard is substantially uncontradicted."

In that case receipt was only good when countersigned by the agent and receipt of premiums in arrears by the agent was held to be the act of the company. Those facts readily distinguish that case from the case at bar.

In the case of Goedecke v. Met. Life Ins. Co., cited by Judge COOLEY, the action was by the guardian on two industrial policies and the testimony tended to show that the insurance company habitually had its agent visit insured each week and, after the insured killed his wife, it did not send its agent around and collect the premium to the jail, where insured was confined before his subsequent death in jail, and did not even send said agent to the usual place of abode of said insured, as it had done. THOMPSON, J., said:

"The court refused an instruction in the nature of a demurrer to the evidence, and submitted the case to the jury upon the only contested issue which remained at the close of the evidence, which was, whether the prompt payment of premiums had been waived, or

whether the defendant was not estopped to insist that the policy had been forfeited by reason of the failure promptly to pay the premiums, in view of the fact that, after the fatal injury which Dille had inflicted upon himself had become known, it had ceased, through its collector, to call for the weekly premiums according to its previous practice with Dille, and according to its universal practice with its other policy-holders in St. Louis.''

In the case of Hanley v. Life Ass'n of America, cited by Judge COOLEY, the suit was by the beneficiary on a $10,000 policy to William Hanley, Secretary of the Insurance Company at the time the policy was issued. The policy was declared forfeited after the death of the insured. In an opinion of the Supreme Court by HENRY, J., the judgment for plaintiff, the beneficiary, was affirmed and the following instruction was approved:

''If the jury are satisfied from the evidence that it had not been the practice of the defendant to exact prompt payment of premiums when due; that it had allowed premiums to remain several days or weeks after they became due, and then accepted payment of the same, these are facts from which the jury may find that the defendant waived a literal compliance with the condition as to punctual payment.''

The action in that case was held to be that of the company, of which insured as secretary, was fully advised.

In the case of McMahon v. Maccabees, cited by Judge COOLEY, the suit was by the widow, who was beneficiary. The defense was failure of the husband, insured, to pay two assessments then due, or give the required certificate of good health. VALLIANT, J., said:

''But a member has a right to look to the general conduct of the society itself, in respect of the observance of its laws, particularly those relating to his own duties, and if the society by its conduct has induced him to fall into a habit of non-observance of some of its requirements it cannot without warning to him of a change of purpose inflict the penalty of failure of strict observance. A member dealing with a subordinate officer of the society, knowing his duties to be prescribed by law, has no right to rely upon the act of that officer, if he should attempt to waive a requirement which under the law he has no right to waive. But when he has dealings of that kind with such officer and those dealings are of such a nature that they must pass under the observation of those who have in charge the ultimate management of the company's affairs to such an extent as to justly induce the member to believe that the practice is approved by the company itself, the company is estopped to take advantage of the situation.''

The case is distinguishable on its facts from the case at bar, but the quotation is especially apt regarding to binding effect of the acts of a mere local agent.

In the case of Britt v. Woodmen of the World, cited by Judge COOLEY, the suit was by the beneficiary on the membership policy of a member after his death. The opinion written by JOHNSON, J., fully warranted headnote No. 1 in the official report, as follows:

"The contract between the deceased husband of plaintiff, and the defendant, a fraternal beneficiary association, contained stipulations that provided automatically for his suspension from membership, and the forfeiture of his insurance, if he failed to pay his dues within a stated and very limited period. Deceased failed to pay such charges for at least five months. Defendant, however, failed to give notice of assessments, and timely notice of a suspension of deceased. The defendant's local lodge moreover assured plaintiff that pursuant to a custom authorized by defendant, no suspension or forfeiture would be declared during her husband's illness. *Held*, although but for these facts, the delinquency of the husband would have *ipso facto* destroyed his membership, and forfeited his beneficiary certificate, defendant could not declare a forfeiture on account of the non-payment of such charges, at least until it had notified the husband of its decision to carry him no longer, and had given him a reasonable opportunity to pay his arrearages."

In the case of Woolfolk v. Home Ins. Co., the action was on a fire insurance policy, where the policy was issued by the local agent, and FARRINGTON, J., said:

"At this time it may not be out of place to call attention to the fact that the laws of Missouri hold insurance companies to the same rules of agency that they do every one else operating in the state; they cannot carry on a business of seek and hide behind an agent who, so far as deriving benefits to the company go, has full authority to make contracts of insurance, and by provisions and stipulations written by themselves seek to withhold from such agent authority to do what he has apparent authority to do in carrying on their chosen line of business."

. We have quoted from enough cases to show that the general rule in Missouri is that the insurance company, when non-payment of premiums is the cause of forfeiture, is only estopped to declare a forfeiture when its conduct and course of dealing have been such as reasonably to cause insured to believe that the insurance company will not attempt a forfeiture for the reason specified in the policy. In none of the cases cited to us, either by Judge COOLEY or by the respondent, has the insurance company been held to be estopped under the circumstances shown by the evidence in the case at bar.

Plaintiff also cites 3 Couch, Encyclopedia of Insurance Law, sec. 668, p. 2196. Section 668 begins on page 2193 of that work and fully states the law. Judge COOLEY stated the general rule and the section from Couch is entirely too long to be quoted here, but we have carefully read it and conclude that it requires something more than the action of a mere legal agent, with the possible knowledge of a gen-

eral agent, to bind the insurance company and prevent it from declaring a forfeiture for non-payment of premiums under the terms of the policy.

Respondent also cites Feld v. Continental Casualty Co. (Cal.), 122 Pac. (2d) 513. We have examined that case carefully and feel that it can readily be distinguished from the case at bar. In the Feld case the insurance company itself had sent insured notice of premium due dates for seventeen years, and in 1939 failed to send such notice and insured, who relied on notice, failed to pay the 1939 premium until after the grace period had expired. It was held in that case that the insurance company was not entitled to forfeit the policy under the circumstances.

It is true that the law does not favor forfeitures and that an appellate court defers somewhat to the findings of fact of the trial chancellor in an equity case. However, an appellate court is not bound by the findings of fact by the chancellor in an equity case, as it is by the verdict of a jury or the findings of a trial judge in a law case, where there is substantial evidence tending to establish such verdict or finding. In an equity case an appellate court may make its own findings of fact and come to a conclusion different from that of the trial chancellor, if satisfied that the trial chancellor erred in his findings of fact.

While the law does not favor forfeitures, we think that if a clause like "K" (1) ever had any force in an insurance policy, it must be regarded as having force in this case. The local agent, although he tried at least three times to call the attention of insured to the fact that the grace period was about to expire, failed for no fault of his own to contact the insured and tell him of such expiration date. Insured knew that he was uninsurable and not subject to reinstatement, and consequently knew he was in danger if he failed to pay premiums as specified. The local agent had called his attention to the expiration date twice under a former policy, and probably each time under the ordinary life policy in suit, except the last time, and insured had always theretofore paid the premiums before the grace period expired, with one eye out for forfeitures. Outside of possibly the general agent, the insurance company did not even know that the local agent had taken it on himself to call the attention of the insured to the date of expiration of the grace period, and the insurance company never had been paid the premiums on such policy in arrears.

We cannot feel that the insurance company is estopped in this case to declare the forfeiture plainly provided for in the policy and we are unable to agree with the learned trial chancellor that it was so estopped.

It becomes unnecessary for us to consider the assignment charging that improper evidence was received over the objection and exception of appellant.

714

It is therefore our order that the judgment of the trial court be reversed and the cause remanded to it with directions to dismiss plaintiff's petition. *Smith* and *Fulbright, JJ.*, concur.